JOSEPH HORACE KURCK *v.* STATE

5254                                                          415 S. W. 2d 61

Opinion delivered May 29, 1967

*Don Steel,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. This appeal is from a conviction arising out of what the State Police describe as a "green money racket money press." The information charged appellant and one Ira Coleman Roberts jointly with obtaining personal property by false pretense, committed as follows:

> "On February 14, 1966, in Polk County, Arkansas, said defendants with intent to defraud or cheat R. M. James Jr., designedly by color of false pretense obtained money, to-wit, $5,000.00, in cash from R. M. James Jr., specifically by pretending to take money from R. M. James Jr., for the purpose of duplicating the same and returning said money to R. M. James Jr., and by absconding with said money."

The record shows that some time prior to February 14 appellant went by the home of James, the prosecuting

witness, with a $10 bill and asked James what he thought about it; that the $10 bill looked all right and James suggested that appellant take it and two other $10 bills to the bank and see if they would pass. Appellant then advised James that the $10 bill was a duplicate. Later, appellant drove James to Bald Knob to meet a friend whom he introduced as Oscar Allen. Oscar Allen took a $10 bill, and some smelly stuff out of a bottle which he spread on two pieces of paper, between which he rolled this $10 bill. Some of the color came off the bill. Allen then took the bill and soaked it in some white stuff and then in some green stuff. Then he went into the bathroom with it, came back and peeled out a wet $10 bill. The numbers on the bill were not the same as the first one. Allen explained this difference in numbers by the use of two little dots. James compared the bill produced by Allen with another $10 bill. Allen then suggested that he had only enough chemical to make one copy of the $10 bill and that he did not have enough to really develop it but one time, so he suggested that Kurck and James get up $10,000 apiece. Thereafter, Kurck and Allen drove by James' home and informed him that they had everything set up in Mena, where Allen's aunt lived.

On February 14, James got together $5,000, met appellant Kurck at the Ritz Motel in Little Rock and rode with him to Mena, where they met Allen at the Mena Cafe. At this time James showed Allen his money and Allen pointed out that two of the $100 bills would not do. This was corrected by James' going to the bank and obtaining four $50 bills for the two $100 bills. From there the parties moved to the Pines Motel at Mena.

At the motel, Kurck put up $1,400 in addition to James' $5,000. Kurck took all the money to the bathroom and wet it in the sink where they used some soap on the bills. The bills were then rinsed off in the bathtub by Allen and dipped in some brown-looking liquid. Allen then sat down at a table and started laying down a piece of white paper, a bill and a piece of white paper,

stacking it all up. When it was all stacked up Allen and Kurck took the stack into the bathroom together with Allen's bag. During this time James was lying on the bed watching Allen and Kurck from the bedroom. When James next saw the stack it was pressed between two pieces of plywood 1½ inches larger on all sides than a dollar bill. Appellant and Allen tightened up the press by the use of two small bolts. James saw this stack of paper with green in between.

After the press was tightened down, it was explained that Allen needed to go get his developing material. The press was put in the front seat of Kurck's automobile between Kurck and James, and Allen pitched his bag in the back seat. In this manner they left the motel to go to the Mena Cafe, where Allen departed, ostensibly to get his developing fluid. After waiting and driving around for an hour or so, it became apparent that Allen was not going to return, so Kurck and James returned to the Ritz Motel in Little Rock with the press in the seat between them. When they arrived at the Ritz Motel the press was opened. It was found to contain two $1 bills on one side and a $5 bill on the other side, the rest of it being play money. Kurck took the play money, flushed it down the commode and left, taking the press with him. The next day James talked to his lawyer and went by to see Kurck. Kurck told James that Oscar Allen was 55 to 60 years old and that he had met him in Newport News, Virginia in 1962.

While on the witness stand, James identified the state's exhibits 1 and 2 as photographs of the person known to him as Oscar Allen.

Carroll Page, a policeman working in the Mena area, testified that on January 5, 1966, he had met appellant Kurck and one Garner Ward in Mena, and that they complained they had lost $2,700 in a swindle known as "green money racket money press." The swindler was alleged to be a man named George Grayson whom

Kurck had met in Virginia about three years earlier. Kurck related how Grayson had demonstrated that he could duplicate a $20 bill and how they made a date to come to Mena, where Grayson was supposed to have had an aunt living. Kurck told Trooper Page that the money was placed in a press, much like the one described by James, that somehow in the shuffle the money was changed to play money, that Mr. Grayson had stated that he had to go get some more materials and would be back shortly. When Grayson did not return, they opened the press, which contained only play money. Kurck described Grayson to Trooper Page as being approximately six feet tall, weighing 170 pounds, with short gray hair, green eyes, and a large round scar on the left side of his neck just below the ear. Kurck described the scar as resembling a cancer that had been removed.

Mrs. Inez G. Bushman, who operates a drive-in on Highway 67 in Searcy, stated that in May Kurck approached her with a $5 bill which he said was duplicate money, and that thereafter he brought a Mr. King with him to talk to her about duplicating money. At this time Mr. King allegedly duplicated a $10 bill in much the same manner as that described by James. However, Mrs. Bushman was skeptical because the numbers differed and because of her observation of the two bills when placed over a lamp. Thereafter she called the treasury agents, who asked her to go through with the deal. While there were some subsequent conversations between Mrs. Bushman, appellant Kurck and Mr. King, she refused to go through with the deal because Kurck and King insisted that the duplication would have to take place approximately 70 miles west of Hot Springs.

For reversal of his conviction, appellant relies upon the four points hereinafter discussed.

POINT I. *The court erred in overruling defendant's demurrer to the information.*

We find appellant's contention that the trial court should have sustained appellant's demurrer to the information to be without merit. While the language of the information is by no means ideal, we think the information is subject to the interpretation that appellant designedly, by color of false pretense, obtained $5,000 from R. M. James Jr., by pretending to take the money for the purpose of duplicating same and (by pretending to) return said money to R. M. James Jr.

POINT II. *The evidence does not support the jury's verdict.*

Under this heading appellant argues that there is no evidence of false representation, no evidence of a fraudulent representation of an existing or past fact, and no evidence that appellant obtained $5,000 from the prosecuting witness.

We find appellant's contentions to be without merit. A close reading of the facts will show that appellant Kurck and his friend, Ira Coleman Roberts (alias Oscar Allen), falsely represented to James that his $5,000 was in the money press—*i. e.,* that his money was in between the white sheets and the two plywood boards which appellant and his friend tightened down before it was placed in the car seat between appellant and James.

We also find appellant's contention that he received no part of the $5,000 to be without merit. The circumstantial evidence shows that he and the said Ira Coleman Roberts were employing a common scheme or method to obtain money by false pretenses and the jury could logically have inferred that since he was in the business he was receiving the proceeds. Furthermore, all distinction between principals and accessories before the fact has been abolished by Ark. Stat. Ann. § 41-118 (Repl. 1964).

When the "green money racket money press" scheme used by appellant and his friend, Ira Coleman

Roberts, is viewed in its entirety, there can be no doubt that James relied upon the representation that his money was in the press when he permitted Ira Coleman Roberts to depart their company, carrying with him the bag which he had taken into the bathroom at the time the money was allegedly placed in the money press.

POINT III. *The court erred in permitting the introduction of photographs of Ira Coleman Roberts over the objection of the appellant.*

We hold this contention to be without merit. The record shows that Sgt. James Honeycutt, of the State Police, identified the person in the pictures as Ira Coleman Roberts. Trooper Carroll Page identified the person in the pictures as Ira Coleman Roberts, and James and Mrs. Bushman both identified the man in the pictures as the man Kurck had introduced to them as Oscar Allen and Mr. King, respectively. In this situation the photographs were properly admitted for identification of the man appellant had introduced as Mr. King and Mr. Allen.

POINT IV. *Trial court erred by permitting the testimony of witnesses as to other transactions.*

It will be observed that the trial court permitted the proof of the other transactions related by Trooper Page and Mrs. Bushman to go to the jury to show appellant's identity, scheme, purpose, intent, design and motive. We have consistently held that proof of other transactions is admissible for such purposes. See *State v. Dulaney,* 87 Ark. 17, 112 S. W. 158 (1908) ; *Keese v. State,* 223 Ark. 261, 265 S. W. 2d 542 (1954) ; *Alford v. State,* 223 Ark. 330, 266 S. W. 2d 804 (1954).

Trooper Page's testimony shows that appellant had knowledge of the manner in which the scheme worked, and that the Mr. Grayson whom appellant alleged to be his friend was described almost exactly as witness James described Mr. Allen. Mrs. Bushman's testimony

shows that she, like James, was first approached by appellant with a "duplicate" bill and that he later introduced to her the same man he had introduced to James for the same alleged purpose.

Under these circumstances, we must hold that the testimony, under the restrictions of the trial court, was competent to go to the jury.

Affirmed.

Brown, J., disqualified.