472

Donald Wayne WARD v. STATE of Arkansas

5298                                    420 S. W. 2d 540
Opinion delivered November 13, 1967
[Rehearing denied December 4, 1967]

*Jack Rose* and *James E. Shoffley,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

J. Fred Jones, Justice. Donald Wayne Ward was convicted in the Sebastian County Circuit Court on charges of burglary and grand larceny. He was sen-

tenced to three years in the penitentiary on the burglary charge and to two years on the larceny charge, and has appealed to this court relying upon the following point for reversal:

"The Appellant contends that the keys taken from his person after his arrest were prejudicial and inadmissible, because the Appellant was actually arrested when he was originally detained, and that the arrest was without probable cause, and that the Trial Court erred in not so finding and in not suppressing this evidence."

About 4:00 a.m. on September 27, 1966, appellant was a passenger in an automobile driven by a Mrs. Anderson in the City of Fort Smith when the automobile was stopped by two police officers for driving too fast on Towson Avenue. Mrs. Anderson was charged with driving without a driver's license and since the automobile bore an Oklahoma license, she was required to go to the police station and post bond. One of the officers drove Mrs. Anderson's automobile to the station while the other officer drove the patrol car, and Mrs. Anderson and appellant rode to the police station with a police captain who had been called to the scene. The Fort Smith Police Department had had a pickup order on the automobile and a warrant had been issued in connection with the purchase of the automobile in Arkansas with worthless checks by Mr. Anderson. The details of this transaction are not important here, but after arriving at the station, in order to prove ownership of the automobile, Mrs. Anderson permitted the police officers to search the automobile. The officers found a payment receipt and a title certificate in the automobile and in addition they found under the front seat of the automobile a motel pillowcase containing over Sixty Dollars in quarters and small change, and also found some men's leather gloves and ladies canvas gloves, a pry bar, a screwdriver, some wire pliers and a jumper cable. Mrs. Anderson and appellant were advised that they were un-

der arrest for investigation for burglary and grand larceny. Appellant was then searched and the contents of his pockets, including some keys, were removed and he was placed in a jail cell.

The officers then retraced with Mrs. Anderson, the route she followed into Fort Smith, and near the place where Mrs. Anderson said she had taken a nap while appellant went for cigarettes, the officers found a pool hall that had been burglarized. The door of the building had been pried open, keys had been taken from an open cash register and money taken from pool tables and a music machine. The owner of the pool hall later identified two of the keys taken from the appellant, as being two keys taken from his cash register. The identification was made by comparing the keys, and the serial number on the keys, taken from appellant, with a duplicate set retained in the possession of the owner's wife. These keys were offered in evidence at the trial and this appeal is based on their admission in evidence.

Prior to the trial of this case, appellant filed a motion to suppress evidence and alleged in his motion as follows:

"2. That the defendant has reason to believe that certain items of his personal belongings consisting of keys and other personal property, which are now in the possession of the State of Arkansas, will be introduced as evidence against him at said trial; that all items found as a result of search of defendant's person at the time or immediately subsequent to his arrest should be excluded as evidence, for the reason that there was not probable cause nor warrant for defendant's arrest, and hence said arrest was an illegal one; that said arrest and search violated defendant's constitutional rights under the constitution of the United States of America and the State of Arkansas."

A separate hearing was had on this motion, at which time the appellant, as well as the police officers, testified. The trial court overruled the motion to suppress and admitted the keys in evidence.

The evidence is clear in this case that appellant did not part with possession of the keys until after the officers had ample grounds to believe that a felony had been committed. Appellant denied that he parted with possession of any keys at all. He testified that he emptied his pockets at the officer's request, but insists that the officers only took some finger nail clippers and handed back his keys. The officers testified that after the appellant was charged with burglary and grand larceny, they searched him and removed the keys from his pockets. There is no discrepancy in the testimony that this incident occurred after the automobile had been lawfully searched and the money in the pillowcase and the other items were found and removed from the automobile.

Appellant contends, however, that he was *actually arrested* when the automobile was first stopped by the officers and the driver, Mrs. Anderson, was given a citation for driving without a driver's license, and he contends that he was still under this arrest when taken to the police station. It is appellant's contention that his arrest was without probable cause or legal right and that if any keys were taken from his possession without a search warrant, they were obtained through an unlawful search and seizure and were inadmissible in evidence against him. Appellant argues that such search and seizure violates his constitutional rights guaranteed to him under Amendment 4 of the Constitution of the United States, and under Article 2, Section 15 of the Constitution of the State of Arkansas, which is as follows:

"The right of the people of this State to be secure in their persons, houses, papers and effects against

unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.''

The appellant very properly points out in his brief that ''the law in the field of arrests, searches and seizures has been a dynamic one in federal courts and other states in this connection,'' and appellant cites several federal court decisions in support of this statement. Appellant also cites our own case of *Clubb* v. *State,* 230 Ark. 688, 326 S. W. 2d 816, which involved evidence obtained in the search of a house trailer without a search warrant. Appellant urges that under the caveat announced in that case, we should adopt the federal rule that all evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in the trial of a criminal case in a state court. We have not deviated far from the caveat announced in the *Clubb* case in 1959, and we do not do so now. Since the 1961 decision of the United States Supreme Court in the case of *Mapp* v. *Ohio,* 367 U. S. 643, we have recognized the rule that where an accused is unlawfully arrested without cause, and searched without a warrant as a result of such unlawful arrest, the search would also be unlawful and keys or anything else seized as a result of such search, could not be used in evidence against him at his trial on a criminal charge unless waived by the accused. See *Cabbiness* v. *State,* 241 Ark. 898, 410 S. W. 2d 867. This is true not merely because of Amendment 14 and Section 15 of Article 2, supra, but because the use of such evidence so obtained, would force the accused to be a witness against himself as prohibited by Amendment 5 of the United States Constitution and in Section 8 of Article 2 of the Constitution of Arkansas.

We do, however, still measure the reasonableness of a search, and determine the lawfulness of any seizure made as a result of it, by the facts of the case before us. It might well be urged in this case that the 4th Amend-

ment to the United States Constitution, as well as Article 2, Section 13 of the State Constitution, protects the security of keys in the owner's cash register where they belonged, as well as in the appellant's pocket where they were found, but that is not the question on this appeal.

We now come to the question of whether or not the search of the appellant was unreasonable and the seizure of the keys was unlawful in this case.

We are of the opinion that the police officers had a right to stop the automobile in which appellant was a passenger. The officers testified that the automobile was speeding when they first observed it and this is not denied. As to whether or not the officers had reasonable grounds for arresting the appellant when the automobile was first stopped, and whether or not the appellant was actually placed under arrest at that time, the evidence is not clear. If the police officers had a warrant for the arrest of Mr. Anderson and had reasonable grounds for believing that the appellant was Mr. Anderson, no one could seriously question their authority in detaining appellant long enough to determine whether or not he was Mr. Anderson.

The record indicates that there was some question in appellant's own mind as to whether he was arrested before the money was found in the automobile he occupied.

"Q. Did they ever say any words such as 'You're under arrest'?

A. To Miss Anderson. They said that she was under arrest for driving without a license, and I just, more or less, took it that I was under arrest for something.

\* \* \*

At the time they brought us to the station, I knew that Mrs. Anderson—they was supposed to file a

no driver's license on her, and I, more or less, figured some charge would be filed against me."

Neither the appellant nor Mrs. Anderson had a driver's license and Captain Walker was called to where the automobile had been stopped in connection with driving the automobile to the police station, and he testified at the hearing on the motion to suppress, as follows:

"Q. * * * Did you know whether they were under arrest when you went to get them, Captain Walker?

A. The only thing—they didn't have any kind of identification, they had a car. I had had a pickup on a car."

At the hearing on the motion, Officer Balch testified:

"We proceeded up to the car, asked the lady driving if we could see her driver's license. She stated she didn't have any, that she had lost her purse between here and Hot Springs somewhere at a service station. At that time I asked her to step out of the car and asked the other party to step out of the car, asked him for identification and he said he didn't have any identification either, that he had lost his billfold that day somewhere, he didn't know where.

*    *    *

"I issued Patricia Anderson a summons for no driver's license and we put them in Captain Walker's car and brought them to the PD, and I drove the police car and Officer King drove the '66 Ford with her permission.

\* \* \*

"We had had a pickup on a car like this but it had a different license number than this car, and the detective were called in to investigate the car.

\* \* \*

"Q. Did you have information as to anyone else or just the car?

A. The car and a Marion Anderson had purchased this car in Paris, Arkansas, and had written a hot check, two hot checks to buy the car.

\* \* \*

"Q. Did you talk to anyone on your radio, and someone on the radio told you that that pickup had been cancelled?

A. No, sir, we hadn't had a cancellation on it.

\* \* \*

"Q. \* \* \* Were you advised to bring both to the Police Station to post bond?

A. Yes, sir, we/on an out-of-state ticket they must post bond.

"Q. Now, why both? Why did you bring the defendant down to the station?

A. He was with her and he had no identification on him, and we didn't know whether he was Marion Anderson or not."

At the trial of the case, Officer Balch testified unequivocally that Mrs. Anderson was given a citation for driving without a driver's license, and that he only asked appellant to step out of the automobile. He denied that the appellant was at any time under arrest prior to his arrest in the police station. He testified that appellant voluntarily went along with Mrs. Anderson to the police station. No effort was made to impeach Officer Balch's testimony at the trial.

Certainly the officers had ample grounds for a reasonable belief that appellant had committed a felony when he was "booked" and the keys taken from his possession at the police station. Appellant does not contend that the evidence is not sufficient to sustain the conviction even if the keys had not been introduced.

We are of the opinion that the trial court did not err in denying appellant's motion to suppress the evidence under the facts and circumstances of this case, and that the judgment of the trial court should be affirmed.

The trial court is to be commended in not only seeing that appellant received a fair trial and the service of a competent counsel, but in seeing that appellant also recognized that he had received a fair trial and the benefit of competent counsel.

Affirmed.

BROWN, J., not participating.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. I dissent from the majority view that the keys were properly introduced into evidence—i. e. that appellant was not placed under arrest at the time the car was stopped.

Captain Walker of the Fort Smith Police Department testified that appellant and a girl named Anderson were turned over to him by officers Balch and King to take to the police station from the place where they had been stopped at Towson and Rogers Avenues. On cross-examination he testified:

"Q. Well, I'm asking you did you feel like he was told to come by the other officers and did you tell him to come with you?

A. I just told him to get in the back and he did.

Q. He did under your orders?

A. Yes, sir.''

Officer Balch testified on cross-examination:

''We were advised to bring both parties to the station, because on an out-of-state ticket, they must post bond. The reason I brought the defendant was because he was with her, and he had no identification. We did not charge him with anything when we brought him down. We just brought him down because he was in the car. We did not tell him he was free to go. We would not have let him go when we stopped the car, because he had no identification on him. We did not issue a ticket for speeding, even though the speed attracted our attention, because it was not speeding when we got behind it. We did not get a clock on it to be fair enough to issue a summons for speeding, but we stopped them anyway, because we wanted to talk to her about her speed. We had known about a warrant, but it was a different license number. We did not stop the car on the strength of any warrant, but stopped it on account of speed. We did not issue a ticket for speeding, but did for no driver's license. Yes, I told the defendant he would have to come to the Police Department with us so we could establish who he was. He gave us his name, was not driving the car, and was not breaking the law at the time we stopped him, but a person must have an ID card on him at all times. Officer King and myself talked to Captain Walker from the scene of the arrest, and nothing was mentioned about a warrant at that time. We told Captain Walker that we had stopped the car to talk to her about speeding. The reason I stopped the car was not because of any warrant; it was because I wanted to talk to the party driving about her speed. The reason I arrested the defendant was

because he was a passenger in a car being driven by a person without driver's license, and he himself had no identification."

Under the facts, I cannot agree with the majority that there was no arrest of appellant at the scene where the automobile was stopped. Under the authority of *Beck* v. *Ohio,* 379 U. S. 89 (1964), the evidence concerning the keys is inadmissible because of the arrest without probable cause. In *Beck* it was pointed out:

"An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment."

I would reverse and remand for new trial.