CHARLES PARROTT v. STATE OF ARKANSAS

5-5393                                           439 S.W. 2d 924

Opinion Delivered April 14, 1969
[Rehearing denied May 12, 1969.]

*Drew & Holloway* for appellant.

*Joe Purcell*, Atty. Gen.; *Don Langston*, Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice . The appellant was charged by information with the crime of robbery. A jury found him guilty and assessed his punishment at 12 years imprisonment in the State Penitentiary. From the judgment on that verdict comes this appeal. On appeal appellant first questions the validity of all proceedings preliminary to his trial of the alleged offense.

At about 10 a.m. on February 15, 1968, the bank in Hartford, Arkansas was robbed of approximately $5,000 by two masked gunmen. While in the bank their general appearance was observed by two women employees and a male official of the bank. When the two robbers left the bank, one was observed to walk with a noticeable peculiarity or a "dragging" of his right foot. Their "get-away" car was parked on the street near the bank. Their departure was observed through the bank window. An accurate description of the automobile

and its license number were noted. The appellant was observed as the driver of the car. The witnesses in the bank were able to see his profile and features since the masks were removed after entering the car. The "get-away" car was found a short time later, abandoned and burning a few miles from the scene of the robbery. The robbery was reported immediately to the law enforcement officials, together with a description of the robbers and other incidental circumstances. The prosecuting attorney secured from the local justice of the peace a warrant of arrest for the appellant. Late in the afternoon of the same day of the robbery the appellant was arrested, based upon this warrant of arrest, in Oklahoma, a distance of approximately 90 miles from the scene of the robbery. At the time of his arrest for this alleged offense, the appellant was in the Adair County Jail on a traffic violation for which he had just been arrested. He was then held in that county jail with the charge of bank robbery placed against him. The next day he was arraigned before a magistrate of Adair County and released upon $5,000 bail. Appellant refused to waive extradition. He was extradited, after a hearing, to the State of Arkansas and placed in the Sebastian County Jail at Fort Smith on March 19, or about a month after his arrest. At the time he was incarcerated in the Sebastian County Jail, his bail was set at $25,000. On March 22, the prosecuting Attorney filed an information direct in the circuit court charging the appellant with the alleged offense. On March 25, the appellant was arraigned in circuit court and bail was set at $50,000. The court later reduced the bail to $35,000 upon appellant's motion. The trial court then refused to approve the tendered bail on the basis that the bondsman had not complied with the court's rule which it had promulgated pursuant to Ark. Stat. Ann. § 43-732 (Repl. 1964). After two hearings before this court, appellant was permitted to make the proffered bail in the sum of $35,000. It appears that he was released on bail pending trial of the case in July.

Appellant has not demonstrated to us any prejudicial error. We find no merit in his contentions relating to the invalidity of any preliminary proceedings. Certainly there was sufficient evidence, and we have only detailed a part of it, as a basis for probable cause in the issuance of the warrant of arrest. Appellant was properly arraigned before a local magistrate in Oklahoma and bail granted and made the day following his arrest. The proper procedure was followed in the extradition proceeding. On the date he was extradited and placed in the Sebastian County Jail a bail was set. The prosecuting attorney then filed a direct charge of robbery against the defendant. This procedure is so well established that it requires no citation of authority to support its validity. In the circumstances, appellant was arraigned within a reasonable time before the circuit court and bail was set. When the trial court refused to recognize his surety, the appellant was admitted to bail after application to this court.

The appellant next argues that the court erred in overruling his motion to suppress and quash a "lineup identification." Appellant urges that his constitutional rights were violated by this procedure and cites several federal cases, including *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967); *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *Gilbert* v. *California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967). In the case at bar, appellant's then counsel was notified of the proposed lineup and was present during the "lineup identification" procedure. It appears that certain objections to the arrangement of the lineup were made by appellant's counsel and the state made corrections accordingly. We find no violation of appellant's constitutional rights in the instant case. Further, it appears that this out-of-court identification was not offered by the state. See *Steel* v. *State,* 246 Ark. 75, 436 S.W. 2d 800 (1969).

The appellant argues that the testimony of certain witnesses was erroneously permitted and that their tes-

timony was immaterial and "designed to reflect guilt by inference" and prevented the appellant from obtaining a fair trial. We cannot agree with the appellant. A review of the testimony of these witnesses reflects that it is relevant to the issues in the case. The testimony of these witnesses was clearly permissible to establish the identity of the appellant and to show circumstances and events that tended to connect him with the commission of the alleged crime. Such evidence has been approved by us many times. *Keese & Pilgreen* v. *State*, 223 Ark. 261, 265 S.W. 2d 542 (1954); *Williams, et al* v. *State*, 237 Ark. 569, 375 S.W. 2d 375 (1964); *Harris* v. *State*, 239 Ark. 771, 394 S.W. 2d 135 (1965); *Kurck* v. *State*, 242 Ark. 742, 415 S.W. 2d 61 (1967).

The appellant asserts that the court erred in permitting the introduction and exhibiting of the contents of appellant's billfold which was taken by search and seizure in violation of his constitutional rights. The appellant complains that it was prejudicial to admit in evidence a receipt found in his billfold which reflected the alias of "Joe Longshore" and indicated that he had paid a traffic fine in that name. This billfold was first taken from the appellant when he was placed in the Adair County Jail for a traffic violation. It was shortly thereafter, and while he was still in jail, that the appellant was arrested on the Arkansas warrant for robbery. We find no error in the introduction into evidence of this receipt since it was incidental to and a product of a lawful arrest *Ward* v. *State*, 243 Ark. 472, 420 S.W. 2d 540 (1967). There was competent evidence by witnesses that the appellant had on occasions used the name "Joe Longshore" and the use of this name tended to connect and identify him with the commission of the alleged crime of robbery.

The appellant contends that the court erred in permitting the prosecuting attorney to interrogate the witness, Pat Leatherwood, about her knowledge of appellant robbing two other banks before the alleged robbery of

the Hartford bank. The witness stated that she did not know the answer to the question. The trial court sustained appellant's objections and denied appellant's motion for a mistrial. We have often held that it is within the sound discretion of the trial court to deny a motion for a mistrial and that such discretion will not be disturbed on appeal unless there is a showing of abuse. *Briley* v. *White,* 209 Ark. 941, 193 S.W. 2d 326 (1946); *Jackson* v. *State,* 245 Ark. 331, 432 S.W. 2d 876 (1968). In the case at bar, the trial court thoroughly admonished the jury to disregard the questions propounded by the prosecuting attorney. We find no abuse by the trial court in the exercise of its discretion. There is yet another reason for a lack of merit to this contention. We have consistently held that an objection must be made, exceptions saved, and the point presented in a motion for a new trial. *Keese & Pilgreen* v. *State, supra; Randall* v. *State,* 239 Ark. 312, 389 S.W. 2d 229 (1965). There is no showing of full compliance with these requirements.

It is appellant's further contention that the trial court erred in refusing to grant a mistrial because of improper statements made by the prosecuting attorney in his opening and closing remarks. We do not agree. We have reviewed these statements and in our view the state's attorney fairly outlined in his opening remarks the evidence that would be offered and he then produced it. The closing argument of the prosecutor appears to us to be within the bounds of permissible argument and fairness. The trial court has a wide discretion in supervising the arguments of counsel before juries. *Stanley* v. *State,* 174 Ark. 743, 297 S.W. 826 (1927); *Bethel & Wallace* v. *State,* 180 Ark. 290, 21 S.W. 2d 176 (1929). In the case at bar the trial court supervised the argument of counsel in a manner of fairness and permitted no manifest prejudice to appellant.

The appellant also asserts that he was prevented from having a fair trial because of "courtesies extended to the jury by the prosecuting attorney, which amounted

to undue influence" upon the jury. This argument is directed to the fact that the prosecuting attorney arranged a place for the jurors to eat during the trial. We find no merit in this argument. The town of Greenwood had recently been almost destroyed by a tornado. There was no public eating place available. Nearby was the Greenwood Recreation Hall. These facilities were made available upon inquiry by the prosecuting attorney and the jurors were transported there for lunch on two separate days in the company of the bailiffs. This was done only after the trial court carefully inquired if there were any objections to this procedure and none were voiced. There is no showing whatsoever that the jurors, under these circumstances, were in any manner influenced by this procedure.

The appellant contends that he was prevented from having a fair trial because of the mingling of the witnesses and numerous law enforcement officials among the jurors during recesses of the trial proceedings. The courthouse had been totally destroyed by the tornado and the trial was held in an improvised courtroom in the cafeteria of a school building. The "band room" was used as a witness room since witnesses were placed under "the rule." The trial court carefully considered the contention of jury misconduct contained in appellant's motion for a new trial. The testimony of the jurors was taken on this issue and we agree with the trial court that there was no evidence of any misconduct on the part of the jurors or any of the witnesses or other parties.

Having carefully reviewed all of appellant's assignments of error and finding no merit in them, the judgment is affirmed.

GEORGE ROSE SMITH, J., concurs.

GEORGE ROSE SMITH, J., concurring. The judgment is rightly subject to affirmance on the merits, but at

the same time the case presents an appropriate occasion for us to call attention to an aspect of Rule 9 that is not infrequently overlooked by counsel. Rule 9 (d) requires that the appellant's abstract consist of a *condensation* of such material parts of the record as are necessary to an understanding of the case. An abstract that is a mere reprint of the record, or of a substantial part of it, may be such a violation of the Rule as to preclude the court from reversing the judgment on its merits. *Gray* v. *Ouachita Creek Watershed Dist.*, 239 Ark. 141, 387 S.W. 2d 605 (1965).

This case falls in that category. The appellant's "abstract" includes about 200 printed pages of testimony reproduced verbatim, in question and answer form. Even though the appellant in a felony case is not required to abstract the record, Rule 11 (f), if he undertakes to do so he is expected to comply with our rules. It would be impossible for us to keep our docket current if we were compelled to read mere reprints of the records in the cases submitted for decision. I think that in the long run it would be a disservice to the bar for us not to call attention occasionally, especially in affirming a judgment on the merits, to such a clear-cut violation of Rule 9 as that which occurred in this instance.