Samuel G. EUBANKS, MD; Ernest W. Marshall, MD; Walter M. Wolfe, MD; Philip S. Crossen, MD; Robert C. Long, MD; Ron Banchongmanie, MD; Ronald L. Levine, MD; Walter H. Zukof, MD.

v.

Governor John Y. BROWN; Steven L. Beshear, Atty. Gen.; David Armstrong, Comm. Atty, Jefferson Co.; Larry Roberts, Comm. Atty, Fayette County; J. Bruce Miller, Jefferson Co. Atty.; E. Lawson King, Fayette Co. Atty.; Grady Stumbo, Sec. for Dept. Human Relations.

Civ. A. No. C 82-0360 L(A).

United States District Court, W.D. Kentucky, Louisville Division.

Sept. 11, 1984.

Nan D. Hunter, Janet Benshoof, Suzanne M. Lynn, ACLU Foundation, New York City, for plaintiffs.

James Dickinson, Frankfort, Ky., N. Scott Lilly, Louisville, Ky., Stanley Stratford, John Gray, Asst. Atty. Gen., Frankfort, Ky., William Hoge, David Lewis, James Ellis, Louisville, Ky., David Enlow, Lexington, Ky., for defendants.

## MEMORANDUM OPINION

ALLEN, Chief Judge.

This action is submitted to the Court on the motion of the plaintiffs for summary judgment. The complaint filed by the plaintiffs requests the Court to declare unconstitutional the major sections of House Bill 339, which is an omnibus anti-abortion law enacted by the Legislature of Kentucky, which was scheduled to take effect on July 15, 1982. On July 9, 1982, this Court issued a continuing temporary restraining order against its implementation. Since the entry of that order, the United States Supreme Court has decided the cases of *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983); *Planned Parenthood Association of Kansas City, Missouri, Inc. v. Ashcroft*, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983); and *Simopoulos v. Virginia*, 462 U.S. 506, 103 S.Ct. 2532, 76 L.Ed.2d 755 (1983). This action, therefore, is ripe for decision.

Before analyzing the challenged sections of the abortion statute, the pertinent sec-

tions of which the Court will set out in an appendix, it is appropriate to discuss generally the principles that have been established in the field of abortion and constitutional law by the Supreme Court of the United States.

Mr. Justice Powell, in the *City of Akron v. Akron Center supra,* makes several general observations. The first is to the effect that "the right of privacy, grounded in the concept of personal liberty guaranteed by the Constitution, encompasses a woman's right to decide whether to terminate her pregnancy." *Id.,* 103 S.Ct. at 2487. Mr. Justice Powell also made it clear that "the full vindication of the woman's fundamental right necessarily requires that her physician be given 'the room he needs to make his best medical judgment'." *Id.,* at 2491. *See also, Colautti v. Franklin,* 439 U.S. 379, 387, 99 S.Ct. 675, 681, 58 L.Ed.2d 596 (1979). Mr. Justice Powell observes that the woman's fundamental right is not unqualified, but that any restrictive state regulation of the right to choose abortion must be supported by a compelling state interest. *Id.,* 103 S.Ct. at 2491.

He then recognizes two compelling interests that may justify state regulation of abortions. The first is the interest in protecting the life of the unborn child which "becomes compelling only at viability, the point at which the fetus 'has the capability of meaningful life outside the mother's womb'." Secondly, a State has a legitimate concern with the health of women who undergo abortions, but "this health interest does not become compelling until 'approximately the end of the first trimester' of pregnancy." *See Roe v. Wade,* 410 U.S. 113, 154, 163, 93 S.Ct. 705, 727, 731, 35 L.Ed.2d 147 (1973) and *City of Akron v. Akron Center, supra.* "Until that time, a pregnant woman must be permitted, in consultation with her physician, to decide to have an abortion and to effectuate that decision 'free of interference by the State'." *Id.,* 103 S.Ct. at 2492.

While Mr. Justice Powell points out that the State may enact regulations touching on the woman's abortion right during the first weeks of pregnancy, these regulations "may not interfere with physician's-patient's consultation or with the woman's choice between abortion and childbirth." *Id.,* at 2492–93. Mr. Justice Powell also points out that from approximately the end of the first trimester of pregnancy "the State 'may regulate the abortion procedure to the extent that the regulation reasonably relates to the preservation and protection of maternal health'." *Id.,* at 2493, citing *Roe v. Wade,* 410 U.S. 113, 163, 93 S.Ct. 705, 732, 35 L.Ed.2d 147 (1973).

■ Coming now from the general to the specific, Section 2 of H.B. 339 (KRS 311.-720) defines various terms used throughout the statute. Subsection 5 of Section 2 defines "fetus" as "a human being from fertilization until birth," and Section 6 defines "human being" as "any member of the species homo sapiens from fertilization until death." These two subsections are unconstitutional because they incorporate into the law a definition of life as beginning at fertilization, a theory which the Supreme Court has not adopted, and which the Supreme Court has held may not be used by a state in a statute to justify its regulation of abortion. *See City of Akron v. Akron Center, supra,* 103 S.Ct. at 2500.

■ Subsection 8 of Section 2 defines "viability" as "that stage of human development when the life of the unborn child may be continued by natural or life-supportive systems outside the womb of the mother." A similar definition was stricken in *Colautti v. Franklin,* 439 U.S. 379, 388, 99 S.Ct. 675, 682, 58 L.Ed.2d 596 (1979) as void for vagueness. In that case, the Supreme Court held that the usage of this definition of viability would subject physicians to possible prosecution for failing to perform to a standard based on what "may be" without reference to the conclusiveness of the physician's own judgment as a defense. The Attorney General of Kentucky has conceded that these statutes are vague.

■ The next attack is launched against Subsection 1 of Section 3, which requires that a physician must determine that an

abortion is necessary before one can be performed. This statute on its face is constitutional as it is identical to the statute in Georgia which was approved by the Supreme Court in *Doe v. Bolton,* 410 U.S. 179, 191, 93 S.Ct. 739, 747, 35 L.Ed.2d 201 *et seq.* (1973). *See also, Charles v. Carey,* 627 F.2d 772, 786–87 (7th Cir.1980).

■ However, the Kentucky statute is rendered unconstitutional, not by reason of its language pertaining to necessity, but by reason of the fact that the Legislature also has enacted Section 9, which is in conflict with Section 3(1). Section 3(1) states that no abortion shall be performed except by a physician, whereas Section 9 allows abortions during the first trimester by the woman upon the advice of a physician. By drafting these two sections in this manner, the Legislature has subjected both the physician and the woman to confusion and uncertainty regarding their rights, since the woman's apparent right under Section 9 to perform the abortion herself upon the advice of a physician during the first trimester is contrary to and completely superseded by Section 3(1), which placed the only right to perform an abortion in the hands of a physician. This bit of faulty draftsmanship could easily be corrected in future legislation.

■ The next attack is made upon Subsection 2 of Section 3, which requires that a private medical consultation between the patient and the physician shall be sufficiently long to enable a physician to determine whether, based upon his best clinical judgment, the abortion is necessary. In addition, the section requires that the physician who is to perform the abortion or the referring physician shall describe the basis for his or her judgment that the abortion is necessary on a form prescribed by the Department as required by KRS 213.055. This section is unconstitutional. In *City of Akron v. Akron Center, supra,* the Supreme Court held that requiring personal counseling to the pregnant woman by "the physician performing the abortion, or for that matter any physician," was not a justifiable vital state interest. *Id.,* 103 S.Ct. at 2502. According to Mr. Justice Powell, "the critical factor is whether [the woman] obtains the necessary information and counseling from a qualified person, not the identity of the person from whom she obtains it." *Id.* Clearly, the State cannot require such counseling to be performed only by physicians.

As to the requirement that the doctor describe the basis for his judgment, a similar requirement was struck down by the Northern District of Illinois in the case of *Charles v. Carey,* 579 F.Supp. 464, 466–67 (E.D.Ill.1983). The Court held that it is unconstitutional to require the doctor to describe the basis for his clinical judgment during the first trimester because such a requirement may unnecessarily interfere with both the confidentiality of the woman's abortion decision and the physician-patient consultation.

■ The next section under attack is Section 4 requiring a two hour waiting period after the signing of the consent form. The Supreme Court in the *City of Akron v. Akron Center, supra,* held unconstitutional a 24-hour waiting period. The Court stated that there was no evidence suggesting that the abortion procedure would be performed more safely because of the delay, nor was there any evidence that the State's legitimate concern that a woman's decision be informed was reasonably served by requiring a waiting period. The Court stated as follows:

We find that Akron has failed to demonstrate that any legitimate state interest is furthered by an arbitrary and inflexible waiting period. There is no evidence suggesting that the abortion procedure will be performed more safely. Nor are we convinced that the State's legitimate concern that the woman's decision be informed is reasonably served by requiring a 24-hour delay as a matter of course. The decision whether to proceed with an abortion is one as to which it is important to "affor[d] the physician adequate discretion in the exercise of his medical judgment." *Colautti v. Franklin,* 439 U.S. 379, 387, 99 S.Ct. 675, 681,

58 L.Ed.2d 596 (1979). In accordance with the ethical standards of the profession, a physician will advise the patient to defer the abortion when he thinks this will be beneficial to her. But if a woman, after appropriate counseling, is prepared to give her written informed consent and proceed with the abortion, a State may not demand that she delay the effectuation of that decision.

The affidavits filed by the plaintiff establish that 57% of their patients travel for more than 200 miles, sometimes leaving home as early as 4 a.m.; 62% of the patients of the Relsco Clinic come from more than 50 miles away. In that Clinic, the patients are not allowed to eat or drink after midnight on the night before the procedure. An additional two hour wait would lengthen the time between consumption of food and the procedure.

The strong language used by the Supreme Court indicates that it would hold that any waiting period is unconstitutional since it stated that a woman, after appropriate counseling, who has given her written consent, may not be required by the State to deny the effectuation of that decision. We must, therefore, hold this section of the statute unconstitutional.

Next plaintiffs attack Sections 4 and 5 which require that every woman receive materials encouraging childbirth and listing adoption agencies, and also that every woman be told that materials are available to her which describe the fetus at various stages of development. In the *City of Akron v. Akron Center, supra,* Mr. Justice Powell stated that a State does not have "unreviewable authority to decide what information a woman must be given before she chooses to have an abortion." *Id.,* 103 S.Ct. at 2500. He went on to hold that· while the woman should be given information of the patient's risk associated with her pregnancy and the technique to be employed, this does not justify regulations which are designed to influence the woman's informed choice between abortion or childbirth. *Id.*

In holding that Akron's Ordinance 1870.-06(B) was unconstitutional, Mr. Justice Powell pointed out that a city cannot insist upon a lengthy and inflexible list of information to be provided to the woman by the doctor, especially where much of the information required is" designed not to inform the woman's consent but rather to persuade her to withhold it altogether." *Id.,* at 2500. While the Court did not specifically refer to the requirement in the ordinance that the patient be furnished with the availability of agencies to provide her with assistance and information with regard to birth control, adoption and childbirth, it is obvious that the furnishing of·such information, plus the furnishing of information concerning the development of fetuses at various stages, constitutes medically irrelevant information designed to persuade the woman to withhold her consent. Therefore, the statute has unreasonably placed obstacles in the path of the doctor upon whom the woman is entitled to rely for advice in connection with her decision. *See City of Akron v. Akron Center, supra,* and *Whalen v. Roe,* 429 U.S. 589, 604 n. 33, 97 S.Ct. 869, 879 n. 33, 51 L.Ed.2d 64 (1977).

The next serious attack is upon Section 6 which requires parental consent for abortions performed upon unemancipated women younger than 18. That section also provides that in the event either or both of the parents or guardians refuse to consent to the abortion, or if the minor elects not to seek their consent, then the appropriate circuit court may authorize an abortion if it determines that the pregnant woman is sufficiently mature or competent to give consent to the proposed abortion.

The Supreme Court has held that "[a] State's interest in protecting immature minors will sustain a requirement of a consent substitute, either parental or judicial ... the State must provide an alternative procedure whereby a pregnant minor may demonstrate that she is sufficiently mature to make the abortion decision herself or that despite her immaturity, an abortion would be in her best interests." *Planned*

*Parenthood, Kansas City Mo. v. Ashcroft, supra,* 103 S.Ct. at 2525.

In the *City of Akron v. Akron Center, supra,* the Supreme Court held unconstitutional a provision prohibiting an abortion on a minor pregnant female under the age of 15, unless the doctor obtained the informed written consent of one of her parents or legal guardians, or unless the minor obtained an order from a court having jurisdiction over her that the abortion be performed or induced. *Id.,* 103 S.Ct. at 2497. The Supreme Court held that the Ohio Juvenile Court proceedings were not "reasonably susceptible of being construed to create an 'opportunity for case-by-case evaluations of the maturity of pregnant minors'." *Id.,* at 2499.

In *Planned Parenthood v. Ashcroft, supra,* the Supreme Court held that the statute was constitutional since it provided that the "juvenile court must receive evidence on 'the emotional development, maturity, intellect and understanding of the minor'." Therefore, full opportunity was given to the minor to show that the decision to abort was in her best interest and that she was mature enough to make her own decision.

While we believe that the statute on its face is constitutional, the plaintiffs contend that, as applied, it would be unconstitutional because of Kentucky's court system, wherein there are many variations as to the scheduling of court hearings. In twelve counties of Kentucky, court is in session only once a week; in thirty-two counties, court is in session only twice a month; in thirty-six counties, there are regular court sessions only once a month. This is true because a circuit judge may service several counties other than the one in which he has a chief office.

In the case of *Indiana Planned Parenthood Affiliates Assn. v. Pearson,* 716 F.2d 1127 (7th Cir.1983), the court had before it the question of whether or not an Indiana statute was constitutional, which provided that an emancipated minor might petition for waiver of a notification requirement by her physician to her parents on the grounds that she was mature enough to make the abortion decision on her own, or that even if immature, waiver of notification was in her best interests.

The Seventh Circuit Court of Appeals noted that "[a] judicial alternative to parental notice or consent 'must "assure" that the resolution of this issue "will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained".' " (quoting *Planned Parenthood v. Ashcroft, supra,* 103 S.Ct. at 2525 n. 16) (quoting *Bellotti v. Baird,* (Bellotti II) 443 U.S. 622, 644, 99 S.Ct. 3035, 3048, 61 L.Ed.2d 797 (1979) ). As the Seventh Circuit pointed out, a statute that does not provide for prompt resolution of the waiver petition is unconstitutional.

The Indiana statute provided that the juvenile court had to rule on a petition for waiver within 48 hours of the filing of the petition, but it specified no procedures for appellate review of an adverse decision. The Seventh Circuit held this provision to be unconstitutional because no time limit was put on the appeal process.

In the case at bar, while the Kentucky statute provides for performance to be given abortion waiver proceedings, there is no specific requirement as to the time in which a decision must be made, or even as to the specific point in time at which the hearing must be held.

Plaintiffs also attack Subsection 4 of Section 6 which states that if the court determines that the pregnant woman is not sufficiently mature or competent to give informed consent, or does not claim to be mature enough or competent enough to give such consent, then the court shall decide whether the performance would be in the best interest of the minor. The statute requires the court not to decide the matter until after parental consultation, in which the court may, as a matter of discretion, participate. The objection is made that that procedure make mandatory parental involvement and, therefore, is contrary to the principle that a State may not make a blanket determination that an abortion may

never be in the minor's best interest without parental approval. *See City of Akron v. Akron Center, supra,* 103 S.Ct. at 2498.

Here, the statute does not require a holding by the Court that the abortion is in the minor's best interest, without parental approval, but merely provides for parental consultation. We do not believe that that portion of Subsection 4 is unconstitutional in and of itself.

■ Section 7 of the statute requires that the doctor performing an abortion on a married woman provide advance notice to the woman's husband, except when an immediate abortion is required by a medical emergency. While no case has been decided on the issue of whether or not such a provision is constitutional, the Supreme Court has held in *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 67–72, 96 S.Ct. 2831, 2840–2842, 49 L.Ed.2d 788 (1976) that a rule requiring the consent of a husband to his wife's abortion is unconstitutional. The underlying rationale for this holding is that the State cannot delegate to a husband a veto power which the State itself is absolutely and totally prohibited from exercising during the first trimester of pregnancy. *Id.,* at 69, 96 S.Ct. at 2841, citing the district court's holding in *Planned Parenthood of Central Missouri v. Danforth,* 392 F.Supp. 1362, 1375 (1975).

■ The Supreme Court states that when a husband and wife disagree on a decision to abort, it is the woman who physically bears the child and who is more directly affected by the pregnancy and, therefore, has the right to unilaterally terminate her pregnancy. *See* 428 U.S. at 70–71, 96 S.Ct. at 2841–2842. Given the absolute right of the woman to terminate the pregnancy during the first trimester, this Court must conclude that the State does not have the constitutional power to require her to notify her husband of her decision to abort, notwithstanding the great desirability of such a notification.

The State itself may not validly claim that it would further the interest of marriage if disclosure is made mandatory. As stated in *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), "the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional make-up. If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Id.,* at 453, 92 S.Ct. at 1038.

As stated in plaintiffs' brief, "[n]otice furnished only because the alternative is criminal prosecution or denial of an abortion is hardly conducive to marital happiness." Marital happiness arises from within the marriage relationship and not by virtue of actions required by the State. The State should not be in a position of forcing a wife to tell her husband, in many situations where the two are not living together, or where, even if living together, there has been physical abuse or emotional disharmony, about her vitally important decision.

■ Subsection 7 of Section 8 provides that all information gathered as to abortions will be confidential, "except to the extent necessary to secure the rights or interest of a person of the Commonwealth pursuant to a court order in civil or criminal actions or proceedings to grant, suspend, or revoke licenses." This section is in violation of an aborting parent's right to confidentiality. *See Planned Parenthood v. Danforth, supra,* 428 U.S. at 80, 96 S.Ct. at 2846.

In that case, the Court held that the State could require records to be kept with regard to abortions which were confidential, with the sole exception of public health officers. Here, the exception to the confidentiality requirement is so broad that it is apparent that the confidentiality of the information would not be protected in any case brought by a husband or parent of an aborting woman. The same observation is true with reference to divorce or custody disputes. The right to confidentiality in

this instance is associated with the right of privacy, which is set out in *Whalen v. Roe, supra,* 429 U.S. at 599, 97 S.Ct. at 876.

■ Plaintiffs also attack Subsections 1, 4(c), 6(b), 6(c) and 6(d) of Section 8. The Supreme Court in *Planned Parenthood v. Danforth, supra,* held that "[r]ecordkeeping and reporting requirements that are reasonably directed to the preservation of maternal health and that properly respect a patient's confidentiality and privacy are permissible." *Id.,* 428 U.S. at 80, 96 S.Ct. at 2846. As a corollary, recordkeeping requirements are permissible where they do not "restrict either the abortion decision itself or the exercise of medical judgment in performing an abortion." *Id.,* at 80, 96 S.Ct. at 2846.

■ The first objectionable provisions require the doctor to list on the form the basis for any medical judgment that a medical emergency existed, and the basis for a clinical judgment that an abortion is necessary. Since we have previously held that the requirement that a physician find that the abortion is necessary is unconstitutional, it follows that the provision relating to necessity for an abortion is unconstitutional. The provision as to the basis for a judgment that a medical emergency existed is not unconstitutional.

As to Subsections 4(c), 6(b), 6(c), and 6(d), the State seeks to establish criteria for complications of abortions which are medically invalid. Section 4(c), for example, establishes abortion as the cause of death when an ectopic pregnancy is not disclosed, even though the abortion procedure is irrelevant to the existence of such a pregnancy. Subsection 6(b) requires the doctor to report a complication if a woman expressed regret over an abortion. This clearly is not a recordkeeping requirement which advances medical knowledge.

■ Finally, there are tort liability sections which establishes that a violation of the informed consent, parental consent or husband notification requirements respectively constitute a *prima facie* case of tort liability against the physician. In light of the Court's previous ruling regarding the unconstitutionality of these provisions, it is obvious that tort liability could not be based upon alleged violations of an unconstitutional statute.

■ Also, the tort liability sections of the statute allow punitive damages and damages for emotional distress unaccompanied by physical injury. Under Kentucky law, punitive damages cannot be granted if an act is done in good faith. *Signer v. First National Bank & Trust Co.,* 455 F.2d 382 (6th Cir.1971). Likewise, emotional distress will be compensated only if it results from physical injuries. *Deutsch v. Shein,* 597 S.W.2d 141 (Ky.1980) and *Hetrick v. Willis,* 439 S.W.2d 924 (Ky.1969).

In *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court held that an Alabama plaintiff in a diversity action against the *New York Times* could not recover damages for libel without a showing of actual malice, even though the circuit court in Alabama permitted such a recovery. The Court held that the permission of such damages would infringe First Amendment rights. The Court stated "[w]hat a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law of libel." *Id.,* at 277, 84 S.Ct. at 724.

■ In *National Association for the Advancement of Colored People v. Clairborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), the Court held that a money judgment entered against the leaders of a black boycott of white businesses, on grounds of a violation of state laws and malicious interference with business, was precluded by the First Amendment. While it is unclear that the State has a right to adopt appropriate legislation to punish physicians guilty of performing abortions after the first trimester, or possibly permitting severe civil penalties for abortion after the first trimester, although in that instance there would be serious doubts raised because of the question of consent to the abortion by the pa-

tient, it is clear that the State has no constitutional right to enact such broad, far-reaching civil statutes which pertain indiscriminately to all abortions. Therefore, the civil liability provisions in the statute are unconstitutional.

Because of the unconstitutionality of so many sections of the statute, it is obvious that the remaining provisions are of little significance and, therefore, plaintiffs are entitled to a summary judgment declaring the entire statutory scheme unconstitutional. In light of the recent Supreme Court decisions cited by this Court and of the other Supreme Court decisions which have followed *Roe v. Wade, supra,* it seems obvious to the Court that the Kentucky Legislature, in the future, can shape abortion legislation that is designed to properly protect the State's legitimate interests. Unfortunately, such was not the case with regard to the drafting of the present legislation.

We will retain the case on the docket for the purpose of allowing the attorneys for the plaintiffs to file a motion for attorneys' fees.

### JUDGMENT

The Court, having entered its memorandum opinion and having granted the plaintiff's motion for summary judgment, and being fully advised in the premises,

IT IS ORDERED AND ADJUDGED that House Bill 339 is unconstitutional in light of the fact that Subsections 1 and 2 of Section 3, and Sections 4, 5, 6, 7 and 8 are unconstitutional, and constitute almost the entire significant portions of the Bill.

The question of attorneys' fees to be awarded counsel for plaintiff is reserved, and the parties are given fifteen (15) days in which to resolve that question by agreement if they can, and if not, counsel for plaintiffs shall file with the Court affidavits and logs setting out their claim for fees and the amount of work they performed.

This is not a final and appealable judgment.