Harvey L. ASHMORE et al *v.* George FORD,
Special Personal Representative of the Estate of
Grady T. LEE and ELECTROLUX CORP.

CA 79-161                        591 S.W. 2d 666

Opinion delivered December 5, 1979
Released for publication January 9, 1980

*Ray & Donovan,* for appellants.

*Penix, Penix & Mixon* and *Reid, Burge & Prevallet,* by: Dan M. Burge, for appellees.

DAVID NEWBERN, Judge. This tort action arose from an accident involving Harvey L. Ashmore, Jr., who was the rider of a motorcycle, and Grady T. Lee, who was the driver of an automobile. The two vehicles were approaching each other from opposite directions on a busy street when the Lee vehicle turned left in front of the motorcycle. Harvey turned his motorcycle to the left to avoid colliding with the car, and his leg struck, or was struck by, the rear panel and bumper of Mr. Lee's car, causing serious injury to Harvey's leg. This action was brought by Harvey L. Ashmore, Sr., and his wife, Clara Sue Ashmore, individually and as next friends of Harvey L. Ashmore, Jr. The defendants were the estate of Mr. Lee and Electrolux Corporation. The allegation of liability of Electrolux was based on the contention that Mr. Lee was an employee of Electrolux acting in the scope of his employment at the time the accident occurred. The issues presented here have mostly to do with proof of that relationship.

A jury found the accident to have been caused by the negligence of Mr. Lee to the extent of 65% and of Harvey L. Ashmore, Jr., to the extent of 35%. Based on that finding and a finding of damages suffered by the plaintiffs, the judgment awarded $13,000.00 to the parents on their individual claims

and $13,000.00 to them on their son's behalf. The jury found Mr. Lee to have been an independent contractor rather than an employee of Electrolux, and thus all of the damages were against Mr. Lee's estate only. The judgment was appealed by the Ashmores to the Arkansas Supreme Court, and the case was assigned to us pursuant to Rule 29(3).

We find three of the appellant's four points are sufficient bases for reversal. We will discuss all four, as they may arise again upon retrial.

## I.

The appellants' first point is that the court erred in refusing to compel Electrolux to produce a statement made by Mr. Lee to Electrolux or its insurer shortly after the accident. In its order, the court cited two cases, *Dritt* v. *Morris,* 235 Ark. 40, 357 S.W. 2d 13 (1962) and *Curbo* v. *Harlan,* 253 Ark. 816, 490 S.W. 2d 467 (1973). The *Dritt* case involved responses to interrogatories allegedly within the "work product of the attorney" privilege. There the Arkansas Supreme Court found it should compel answers to some of its interrogatories but not others, applying the well known "necessity" test established in *Hickman* v. *Taylor,* 329 U.S. 495, 67 S. Ct. 385 (1947). In *Curbo,* the Supreme Court approved the trial court's order compelling production of a statement obtained by an insurance investigator and subsequently given to an attorney. The trial court had ruled the statement was not part of an attorney's work product.

After citing those cases, and without discussion of them, the court said it would not compel production of the statement for three reasons: (1) the appellants had interviewed Mr. Lee after the accident, (2) agency or acting within the scope of employment cannot be proven by the admission of the alleged agent, and (3) the statement would not be admissible because of the " Dead Man's Statute." We will discuss these reasons in reverse order.

The " Dead Man's Statute," found in Section 2 of the Schedule of the Arkansas Constitution of 1874, was repealed

with the adoption of the Uniform Rules of Evidence in 1974. Ark. Stat. Ann. § 28-1001 (Supp. 1977). In *Davis* v. *Hare,* 262 Ark. 818, 561 S.W. 2d 321 (1978), it was held that this was a rule of evidence or a "procedural" change and thus the new rule was applicable because the trial, as opposed to the operative facts, occurred after the change in the law. That is the case here.

The second reason gives us equally little pause, as it went to admissibility rather than discoverability. Under the discovery statutes applicable at the time the order was entered, production of the statement could have been required regardless of its admissibility if the request appeared reasonably calculated to lead to the discovery of admissible evidence. Ark. Stat. Ann. §§ 28-356 and 28-348 (b) (Repl. 1962).

We might interpret the court's first reason for denying production as being there was no "good cause" for production of the statement.[1] Even if that had been the court's reason in referring to the pretrial interview of Mr. Lee, it would have been invalid. Harvey T. Ashmore, Sr., said in testimony proffered at the trial that Mr. Lee had told him he was on his way to call on an Electrolux customer in the statement sought, that evidence would have been valuable to the appellants on the question of scope of employment, and possibly the general issue of employment. An excellent discussion on the need for liberal interpretation of discovery rules in the light of circumstances of the case at hand appears in *Marrow* v. *State Farm Ins. Co.,* 264 Ark. 227, 570 S.W. 2d 607 (1978). There Judge Fogleman made it clear that when proof of a party's case depends largely on testimony of his adversary and documents kept by his adversary, "the scope of discovery permitted should be broader than otherwise and . . . [the seeking party] . . . should be allowed to inspect any writing in the files . . . [of the adversary] . . . which might lead to admissible evidence." (264 Ark. at 237)

---

[1] The statute which required a showing of good cause for production of documents, Ark. Stat. Ann. § 28-356 (Repl. 1962), was in effect at the time of this discovery request. The "good cause" requirement has been eliminated from the rule which has replaced the statute. See, A.R. Civ. P. 34.

The appellees contend the error, if any, was harmless, as the jury found Mr. Lee was an independent contractor. That argument is specious, as the statement sought could have produced or led to evidence upon which the jury could have reached the conclusion Mr. Lee was an employee of Electrolux acting in the scope of his employment.

## II.

The appellants' second argument is that the trial court erred in not allowing Harvey L. Ashmore, Sr., to testify as to what Lea Vincent, an Electrolux office employee, told him about Mr. Lee's activities on the day of the accident. The court ruled the proffered testimony was hearsay. The appellants contend the testimony is excepted from the hearsay rule under Rule 801 (d) (2) of the Uniform Rules of Evidence. Ark. Stat. Ann. § 28-1001 (Repl. 1979).

We approve the trial court's action in excluding this testimony. The proffer was to the effect that Ms. Vincent, whose whereabouts at the time of the trial were unknown, told Mr. Ashmore that on the day of the trial Mr. Lee had been at the Electrolux office to ''pick up his calls,'' and that he had returned to the office shortly after the accident. This testimony was relevant on the question of the employment relationship between Mr. Lee and Electrolux, but to be admissible under Rule 801 (d) (2), *supra,* it must constitute an admission.

We find no Arkansas cases containing specific definition of ''admission.'' It is generally defined, however, as a concession or a statement by a party or his agent amounting to a prior acknowledgment of a fact the party denies. *In Re Brooklyn Bridge Southwest Urban Renewal Project,* 50 Misc. 2d 478, 270 N.Y.S. 703 (1966), and *Hartford Accident & Indemnity Co.* v. *McCardell,* 369 S.W. 2d 331 (Tex. 1963). At no time did Electrolux deny the facts sought to be asserted in Ms. Vincent's statement to Mr. Ashmore. At one point in a deposition the Electrolux district manager denied Mr. Lee was working ''in the course of his employment'' at the time of the accident, but the abstract before us does not show that he or any other Electrolux representative denied

that Mr. Lee was at their office on the day in question or that he had picked up his calls that day.

## III.

The appellants' third argument is that the trial court erred in refusing to permit Mr. Ashmore, Sr., to testify that Ms. Vincent asked him to fill out an accident report for Electrolux's insurer. The appellants proffered Mr. Ashmore's testimony and offered an instruction taken directly, and altered only insignificantly, from *Delamar & Allison* v. *Ward,* 184 Ark. 82, 41 S.W. 2d 760 (1931). The instruction, which was approved in the *Delamar* case, makes clear evidence of insurance coverage of a vehicle is admissible on the issue whether the vehicle was being driven for the purposes of or under the control of the party carrying the insurance.

In their response to the appellants' argument, the appellees cite only *Hogan Co.* v. *Nichols et al,* 254 Ark. 771, 496 S.W. 2d 404 (1973), in which the Arkansas Supreme Court found evidence of an insurance agreement should not have been admitted to prove an employer-employee relationship. In that case, however, there was evidence that the alleged employer could not have purchased insurance covering vehicles hired but not owned by it, and covering them only when driven by an employee of the alleged employer. The *Delamar* case was distinguished in *Hogan* on the basis of proof in the latter that existence of the particular policy and its coverage was consistent with either independent contractor or employee status of the driver.

In the case before us, we have no evidence what the policy provided, nor do we have any evidence that Electrolux could not have purchased insurance covering its employees, no matter whose cars they drove. While we can distinguish this case from *Hogan,* we cannot distinguish it from *Delamar.*

The trial judge apparently made no discretionary determination under Rule 403, Ark. Stat. Ann. § 28-1001, *supra,* that any prejudice resulting from introduction of evidence of insurance would outweigh the probative value of

the evidence. At least, if he did so, it does not appear in the abstract. Thus, we find no justification for the court to have refused to permit the testimony or to have given the requested instruction, had the testimony been permitted.

## IV.

The final point made by the appellants is that the court erred in refusing to give A.M.I. 614, an instruction saying that a person confronted with a "sudden emergency" is charged only with the duty of care reasonably expected under those circumstances. The instruction points out that it applies only to sudden emergencies which are not caused by the negligence of the party requesting the instruction.

Two lines of Arkansas Supreme Court cases have developed on the propriety of giving this instruction. Some say the language of the instruction pointing out that it applies only where the negligence of the party seeking the instruction did not cause the emergency is a sufficient safeguard, thus implying the instruction may be given even when there is some evidence of negligence on the part of the party seeking the instruction. See, *e.g., Hooten* v. *DeJarnatt,* 237 Ark. 792, 376 S.W. 2d 272 (1964). Others say a party is not entitled to the instruction where his own negligence has created the emergency. See, *e.g., Williams* v. *Carr, et al,* 263 Ark. 326, 565 S.W. 2d 400 (1978). These approaches are not inconsistent. When they are combined, the result is that the trial judge may give the instruction in cases where there is some negligence on the part of the party seeking the instruction, but the instruction should not be given where the evidence is very strong that the party requesting the instruction has "created" the emergency by his own negilgence.

In the case before us, we are not asked to say there was not substantial evidence to support the jury's finding of 35% negligence on the party of Harvey L. Ashmore, Jr., but we would have had difficulty finding that evidence had we been asked. At the very least, it is clear to us that there was no strong evidence that an emergency was created by negligence of Harvey. The instruction should have been given.

Reversed and remanded.

Judge Penix did not participate.