Sheila DIEMER *v.* Dennis G. DISCHLER

92-1253                                                        852 S.W.2d 793

Supreme Court of Arkansas
Opinion delivered May 10, 1993
[Rehearing denied June 7, 1993.]

*Gary Eubanks & Associates*, by: *James Gerard Schulze* and *Hugh F. Spinks*, for appellant.

*Wright, Lindsey & Jennings*, for appellee.

ROBERT L. BROWN, Justice. This case concerns a vehicular accident and a verdict in favor of the defendant/appellee, Dennis G. Dischler. Appellant Sheila Diemer urges that a new trial is warranted due to failure to give the sudden emergency instruction, AMI 614, and further because of juror misconduct occasioned by independent experiments on the highway in question conducted by two jurors and relayed to other members of the jury. We disagree that the asserted errors warrant a new trial, and we hold that there was no abuse of discretion by the trial court in either instance.

At about 4:25 p.m. on August 29, 1990, Sheila Diemer was driving her 1983 Toyota Tercel on Highway 66 West in the city of Mountain View. She negotiated a curve some distance away from the highway's intersection with Maple Drive and saw a forklift operated by Dischler in her lane of traffic.

Dischler at the time was an employee of Dearien Builders Supply and had driven the forklift out of the company yard with the intention of crossing the highway to a lot containing warehouses. He had begun pulling the forklift out on the highway when he saw Diemer's car at a distance of what he estimated to be about 200 or 300 feet, heading toward him at what appeared to him to be a "pretty fast" speed. A sign posted in the vicinity showed 45 miles per hour as the speed limit.

Dischler stopped, assuming that Diemer would be able to go around him. At that point, according to a subsequent report by the investigating police officer, the body of the forklift blocked the entire westbound lane of traffic, which was Diemer's lane, while the back end of the vehicle was still on Maple Drive. The tines of the forklift were close to or on the center line. The opposite,

eastbound traffic lane was clear.

When Diemer saw the forklift in the road, she applied her brakes and veered to the right in an attempt to go around the rear of the vehicle. She was unsuccessful, and her car collided with the forklift. Dischler was thrown from the forklift but was not injured. Diemer was rendered unconscious and taken to a Memphis hospital. She subsequently filed a complaint against Dischler, charging him with negligence.

At trial almost two years later, both Dischler and Diemer called accident reconstruction experts. Dr. Larry Williams, testifying for Dischler, calculated that given normal reaction time and a speed of 45 miles per hour and the fact that Diemer could see the forklift from 343.5 feet away, she could have stopped between 150 and 160 feet short of the forklift. Even at a speed of 60 miles per hour, he opined, she still could have stopped before hitting the forklift. In Dr. William's opinion, Diemer had been speeding.

Steve Jackson, Dischler's reconstructionist, disagreed with Dr. Williams on the speeding issue. He distinguished "emergency" from "discriminative" reactions. In the former situation, he stated, a person has "only one option" and ordinarily three-quarters of a second in which to exercise it. In the latter case, he testified that a person perceives a hazard and has time to employ several options for evading the accident. In this instance, he opined that Diemer had time to try at least two options.

On the second day of trial, Diemer asked that AMI 614, the sudden emergency instruction, be given to the jury, but the trial court refused to give it. The case then went to the jury, and nine members of the jury returned a verdict in favor of Dischler.

Almost three weeks later, on July 15, 1992, Diemer filed a motion for a new trial under Ark. R. Civ. P. 59(a), contending that she had been deprived of a fair trial because of juror misconduct. Specifically, she asserted that Janice Keene, a juror who had not joined in the verdict, had contacted the Stone County Circuit Clerk and revealed that during jury deliberations two unnamed jurors had stated that they had viewed the scene of the accident and had performed an "experiment" in an attempt to recreate the accident. The two jurors, according to Keene,

informed their colleagues that their experiment demonstrated that they were able to stop their vehicles before they reached the point of impact.

Janice Keene signed an affidavit containing this information, and on that same day, another juror who had not joined in the verdict, Shirley Barnes, signed substantially the same affidavit. The affidavits were attached to Diemer's motion for a new trial. In his response to the motion, Dischler pointed to the fact that neither affiant was able to recall the names of the jurors involved in the asserted misconduct and that the affidavits lacked specificity. The trial court denied the motion.

## I. SUDDEN EMERGENCY INSTRUCTION

Diemer first urges that the trial court erred in refusing to give the sudden emergency instruction, AMI 614. That instruction provides that:

> A person who is suddenly and unexpectedly confronted with danger to herself or others not caused by her own negligence is not required to use the same judgment that is required of her in calmer and more deliberate moments. She is required to use only the care that a reasonably careful person would use in the same situation.

It should be noted at the outset that there is no evidence that Dischler suddenly pulled the forklift out in front of Diemer. The forklift was already in the highway when Diemer rounded the curve and saw it. Moreover, the testimony of Diemer's accident reconstruction expert, Dr. Larry Williams, established that a driver's line of vision from a residential mailbox to the point of impact was 343.5 feet. The sight-line for that distance, Dr. Williams determined, was unobstructed. Had Diemer been traveling at the posted speed of 45 miles per hour, according to the expert's calculations, she could have reacted and stopped her car in 187 feet. Even at an excessive rate of 60 miles per hour, she could have stopped in 290 feet — 53.5 feet before reaching the forklift. Dr. Williams further testified that the unobstructed sight-line on the highway to point of impact was even longer than 343.5 feet.

What is required in order to warrant the sudden emergency instruction is that the driver be in a stressful situation

that dictates a quick decision regarding possible courses of conduct. *McElroy* v. *Benefield*, 299 Ark. 112, 771 S.W.2d 274 (1989). Before a person is entitled to the instruction, that person must have been aware of the danger, have perceived the emergency, and have acted in accordance with the stress caused by the danger. *Id; see also Transit Homes, Inc.* v. *Bellamy*, 282 Ark. 453, 671 S.W.2d 153 (1984). In the *McElroy* case, for example, we held that there was no error in giving the instruction when the appellee testified that he saw the appellants' vehicle sitting at the edge of the highway and eased over to avoid hitting it. When he did so, the appellants pulled out in front of him, and he slammed on his brakes and skidded 108 feet to the point of impact.

Another case involving sudden movement into the path of a vehicle is *Holcomb* v. *Gilbraith*, 257 Ark. 32, 513, S.W.2d 796 (1974). There, a teenage pedestrian, whom the appellee had seen walking along a highway, made a sudden turn into the highway when the appellee's automobile was within 100 feet of the person. We held that the sudden emergency instruction was properly given under those circumstances. *See also Johnson* v. *Nelson*, 242 Ark. 10, 411 S.W.2d 661 (1967) (the giving of AMI 614 was appropriate where a fourteen-year-old boy either stepped or fell into a street directly in front of the appellee's vehicle).

In the present case, there was testimony by Diemer that she saw the forklift upon rounding the curve. Furthermore, Dischler testified that Diemer was proceeding at a "pretty fast" speed, and Dr. Larry Williams opined that Diemer could have stopped and avoided the accident with time and room to spare. Diemer's own witness, Steve Jackson, testified that she had time to employ at least two options. In light of this testimony, the trial court had a sound basis for finding that the danger was not so sudden or unexpected as to justify the instruction.

One other point also militates in favor of the trial court's decision. AMI 614 requires that the sudden emergency not be caused by the negligence of the party requesting the instruction. We have held in this regard that where the evidence of some negligence on the part of the requesting party is "very strong," that party is not entitled to the instruction. *Scroggins* v. *Southern Farmer's Assn*, 304 Ark. 426, 803 S.W.2d 515 (1991); *see also Ashmore* v. *Ford*, 267 Ark. 854, 591 S.W.2d 666 (Ark.

App. 1979). Under the facts of this case, the trial court could readily have found that the evidence was sufficiently strong that Diemer was speeding and helped create the emergency.

There was no error in the trial court's refusal to give AMI 614.

## II. JUROR MISCONDUCT

For her second point, Diemer urges that the jury was tainted by extraneous information brought into the jury room by two unnamed jurors who conducted an experiment on Highway 66 West. The two affidavits are identical regarding what the jurors did:

> 2. During deliberations, at least two members of the jury stated that they had viewed the scene of the accident. Two members also stated that they had performed an experiment. They went to the scene of the accident and attempted to stop at the place the accident occurred. They concluded that they were able to stop before they would have hit the forklift driven by Mr. Dischler, and they argued, therefore, that plaintiff should have been able to stop.

No further description or evidence of the averred misconduct was presented to the trial court.

When a new trial is requested because of juror misconduct under the rubric of Ark. R. Civ. P. 59(a), the moving party must show that the party's rights have been materially affected by demonstrating that a *reasonable possibility of prejudice* has resulted from the misconduct. *St. Louis Southwestern Ry. Co.* v. *White*, 302 Ark. 193, 788 S.W.2d 483 (1990); *Borden* v. *St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985). We have held that prejudice, in such instances, is not presumed. *St. Louis Southwestern Ry. Co.* v. *White, supra.* Trial courts are vested with great discretion in acting on motions for new trial, and, in a case in which a new trial is requested on the ground of juror misconduct, we will not reverse the trial court's denial unless there is a manifest abuse of that discretion. *Id.*

Dischler contends that the motion for the new trial and the

accompanying affidavits were defective because they failed to identify the names of the jurors whose actions were the basis of the motion and, further, they failed to describe the experiment performed with specificity. As a result, Dischler contends, the trial court could only speculate about the actions of the jurors at the accident site, and such speculation would itself have been an abuse of discretion.

Three recent cases discuss the factor that we consider important in assessing juror misconduct. In *B. & J. Byers Trucking, Inc.* v. *Robinson,* 281 Ark. 442, 665 S.W.2d 258 (1984), a jury foreman visited the portion of a highway where a rear-end collision involving a car and truck had occurred and told his fellow jurors "that the truck should have stopped in time, or something to that effect." 281 Ark. at 447, 665 S.W.2d at 262. The affiant stated that he believed that the foreman's statement influenced some of the jurors. There was no admonishment by the trial court for jurors not to visit the scene of the accident.

We first noted that what was then Uniform Evidence Rule 606(b) provided that a juror may testify on the question of whether "extraneous prejudicial information was brought to the jury's attention." We followed this by stating: "When we lay aside the foreman's expression of opinion and its possible effect as being inadmissible, all that remains is that a juror, who had not been cautioned against visiting the scene, went out to a place on the public highway that was open to inspection by everyone and with which he might have been familiar. There was no extraneous information in the sense that the juror talked to anyone else when he went to the scene." 281 Ark. at 448, 665 S.W.2d at 262. On that basis, we affirmed the trial court's decision.

In *Borden* v. *St. Louis Southwestern Ry. Co., supra,* which involved a truck-train collision case, we held that the trial court had not abused its discretion in *granting* a new trial. In *Borden,* the trial court admonished the jury not to make independent investigations into the facts. Nonetheless, the jury foreman and another juror took it upon themselves to go to the railroad crossing, in the words of a juror's affidavit, "to satisfy themselves about the view." 287 Ark. at 318, 698 S.W.2d at 796. According to one juror's affidavit, they told the other jurors that, contrary to photographs which had been introduced into evidence, the

railroad switchbox blocked a motorist's view. 287 Ark. at 319, 698 S.W.2d at 796. In addition, the bailiff reported by way of an affidavit that the jury foreman had told him that "*he watched a train approach the crossing and that it didn't blow its whistle until it was about 200 feet from the crossing and then only one time.*" 287 Ark. at 318, 698 S.W.2d at 796. (Emphasis in original.) The offending jurors were named in the affidavits. We concluded that the trial court was correct in granting a new trial and that the affidavits established a reasonable possibility of prejudice.

In the most recent case-in-point, *St. Louis Southwestern Ry. Co.* v. *White, supra,* a train-and-truck collision was the basis of a tort action. After a verdict for the plaintiff truck driver, one of the jurors contacted the circuit clerk to report her concerns about the jury's deliberations. Later, she contacted the railroad company, which filed a motion for a new trial based on the affidavits of two jurors who stated that they, the affiants, had both gone to the railroad crossing during the trial and had discussed with other jurors their observations of the view down the track. The trial court had given no instruction against going to the accident site.

The trial court denied a new trial, and we affirmed. We held that the circumstances of alleged juror misconduct fell "somewhere between the casual observation in *B. & J. Byers* and the more extensive investigations made in *Borden.*" 302 Ark. at 197, 788 S.W.2d at 485. Moreover, there was no patent disobedience of a court admonishment and no impugning of specific facts by the jurors' observations as had been the case in *Borden* v. *St. Louis Southwestern Ry. Co., supra.*

We can glean certain factors from these three cases which are determinative of whether the trial court was correct in denying a new trial in the present case. We first have focused on whether the trial court instructed the jury not to visit the site of the accident. Secondly, we have evaluated whether the juror offender simply voiced an opinion or engaged in an experiment relating to a crucial issue. Next, there is the question of prejudice and whether the offending juror's observations impugned a fact presented by a party. We add to these factors the question of whether the affiant describes the alleged juror misconduct with sufficient specificity which would include identifying the names of

the jurors who engaged in the acts complained of.

We cannot agree that failure to grant a new trial was a manifest abuse of discretion. To be sure, the affidavits raise a serious question. But the trial court was not presented with the names of the offending jurors or the details of what went into the experiment. Without details and names, the trial court was left to speculate on whether what the jurors did amounted to little more than voicing their opinion. The mere voicing of an opinion is not juror misconduct, and we so held in *B. & J. Byers Trucking, Inc.* v. *Robinson, supra*. Moreover, the court stated that eleven of the jurors were familiar with the intersection, had admitted such during voir dire, and probably drove by it on their way to the trial.

The trial court concluded that the affidavits of the complaining jurors were simply insufficient to establish an evidentiary basis for a new trial and that a reasonable possibility of prejudice was lacking. Under these circumstances, we cannot say that the decision constituted a manifest abuse of discretion.

One additional factor has a bearing on our decision. Diemer did not ask the trial court to instruct the jury not to visit the accident scene and conduct experiments. As a consequence, no admonishment was given by the trial court. Flagrant disobedience by the jurors would have suggested more purposeful conduct to decide the issue outside of the courtroom than what was demonstrated here.

Affirmed.

HOLT, C.J., dissents.

JACK HOLT, JR., Chief Justice, dissenting. The trial court concluded that the affidavits of the complaining jurors concerning juror misconduct were simply insufficient to establish an evidentiary basis for a new trial and that a reasonable possibility of prejudice was lacking.

The majority holds that under these circumstances, the decision of the trial court did not constitute a manifest abuse of discretion. I disagree.

In this instance, two former jurors stated under oath by separate affidavits that two other jurors went to the accident scene, conducted experiments on what was the core issue of this

litigation, then reported their findings to the panel. The trial court made its decision to deny the motion for new trial after reading the affidavits, the parties' briefs on the issue, and after holding a short hearing on this motion. At this hearing, the two parties presented their arguments, but the court did not call in any of the jurors. This was wrong.

In *Marshall* v. *United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), the trial judge was informed during the trial that the jurors had been exposed to newspapers providing information on the defendant's prior record. In response, he summoned the jurors into his chambers one by one and inquired if they had read the articles.

In *Parrott* v. *State*, 246 Ark. 672, 439 S.W.2d 924 (1969), juror misconduct was alleged because the jurors were permitted to intermingle with witnesses and law enforcement officials during the trial lunch breaks. In affirming the trial court's refusal to grant a new trial based upon juror misconduct, this court noted that the "trial court carefully considered the contention of jury misconduct contained in appellant's motion for a new trial. The testimony of the jurors were taken. . ." *Id.* at 678.

In *Langston* v. *Hileman*, 284 Ark. 140, 680 S.W.2d 89 (1984), the appellant learned after the trial that the jury foreman was seen talking to one of the parties and also seen showing other jurors pictures as well as pointing out facts that had been revealed during the trial. Also, allegedly the foreman had been seen talking to a witness for the plaintiff during every recess. The trial court ultimately held a hearing on appellant's motion for new trial and questioned the foreman.

Lastly, in *Mitchell* v. *State*, 299 Ark. 566, 776 S.W.2d 332 (1989), it was alleged that the victim had spoken with two jurors during a trial recess. The judge held a hearing on the motion for new trial based upon juror misconduct and listened to the testimony of a number of witnesses on this issue.

Clearly, as these cases illustrate, it is not uncommon for a trial court, when presented with a serious allegation of juror misconduct, to summon the jury into his chambers to ascertain whether the jurors are guilty of a transgression affecting the trial decision. Such action should be taken by the trial court regardless

of whether it is requested by counsel. Allegations of jury experimentation during the course of a trial is of serious import. We have said that we do not permit such experiments. *Borden* v. *St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985).

Since two jurors' affidavits attesting to experiments performed by the jurors were presented to the trial court, I feel that the trial court abused its discretion in failing to explore these allegations by at least summoning the jurors to his chambers for appropriate examination. Because of this failure to do so, I would remand to the trial court for further proceedings consistent with this dissent.