Sharra DRUCKENMILLER *v.* Danny J. CLUFF

93-734                                              873 S.W.2d 526

Supreme Court of Arkansas
Opinion delivered April 11, 1994

*Gary Eubanks & Associates*, by: *James Gerard Schulze* and *Hugh F. Spinks*, for appellant.

*Anderson & Kilpatrick*, by: *Mariam T. Hopkins*, for appellee.

JACK HOLT, JR., Chief Justice. This appeal follows a defendant's verdict in an action for negligence arising from a motor-vehicle accident. The appellant, Sharra Druckenmiller, argues two points for reversal, asserting error on the trial court's part in submitting the issue of her own negligence to the jury and in refusing to give AMI Civil 3d, 614, the "sudden emergency" instruction. We hold that the trial court did not err in either instance, and we affirm its judgment.

## Facts

On September 29, 1990, at about 3:20 p.m., Mrs. Druckenmiller was driving her Honda Accord west on Highway 100, a four-lane, divided thoroughfare, in Maumelle, Arkansas. Appellee Danny J. Cluff was headed east on Highway 100, driving a Freightliner truck owned by his employer, appellee M.S. Carriers, Inc.

At the intersection of Highway 100 and Murphy Road, Mr. Cluff began to make a left turn. Mrs. Druckenmiller was between seventy-five and one-hundred feet away, and, as she subsequently testified, she applied her brakes at a distance of approximately fifty feet from the truck. Her car skidded from the inside to the outside westbound lane and struck the truck. Mrs. Druckenmiller was injured and her vehicle damaged. The police cited Mr. Cluff for failing to yield right-of-way when making a turn.

In her complaint, Mrs. Druckenmiller alleged that Mr. Cluff

negligently made a left turn into the path of her vehicle, thereby causing a collision, damages, and personal injuries. The trial court submitted the issue of negligence with respect to both parties to the jury and refused to give a sudden emergency instruction proffered by Mrs. Druckenmiller. The jury rendered a general verdict in favor of Mr. Cluff and M.S. Carriers, Inc.

*I. Submission of appellant's negligence to jury*

On appeal, Mrs. Druckenmiller first contends that the trial court erred in submitting the issue of her negligence to the jury in the absence of any substantial evidence that she was guilty of any fault. She maintains that the photographic exhibits show that there is a straight stretch of road for a substantial distance before the intersection of Highway 100 and Murphy Road, rendering it improbable that she could have been going fast enough for Mr. Cluff not to have seen her approaching as he turned.

The trial court instructed the jury, under AMI Civil 3d, 203, that Mrs. Druckenmiller had the burden of proving that she sustained damages, that Mr. Cluff and M.S. Carriers were negligent, and that such negligence was a proximate cause of her damages. The court also employed AMI Civil 3d, 206, in instructing the jury that Mr. Cluff and M.S. Carriers asserted that Mrs. Druckenmiller was guilty of negligence which was a proximate cause of her own injuries and that they bore the burden of proving their contention.

To aid the jury in its determination of negligence on the part of either driver, the trial court read AMI Civil 3d, 901, which permits consideration of the following rules of the road:

First, it is the duty of the driver of a motor vehicle to keep a lookout for other vehicles or persons on the street or highway. The lookout required is that which a reasonably careful driver would keep under the circumstances similar to those shown by the evidence in this case; and

Second, it is the duty of the driver of a motor vehicle to keep his vehicle under control. The control required is that which a reasonably careful driver would maintain under circumstances similar to those shown by the evidence in this case.

A failure to meet the standard of conduct required by either of these rules is negligence.

In addition, the trial court read AMI Civil 3d, 903, allowing the jury to consider as evidence of negligence the violation of the following statutory provision:

The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard. The driver, after having so yielded and having given a signal when and as required by this chapter, may make the left turn after all other vehicles approaching the intersection which constitute an immediate hazard shall have cleared the intersection.

Ark. Code Ann. § 27-51-502 (1987).

Reading AMI Civil 3d, 2102, the trial court offered the jurors four options:

If you should find that the occurrence was proximately caused by the negligence on the part of Danny Cluff and not by the negligence on the part of Sharra Druckenmiller, then Sharra Druckenmiller is entitled to recover the full amount of any damages you may find she has sustained as a result of the occurrence.

If you should find that the occurrence was proximately caused by the negligence of both Sharra Druckenmiller and Danny Cluff, then you must compare the percentage of their negligence.

If the negligence of Sharra Druckenmiller is of less degree than the negligence of Danny Cluff, then Sharra Druckenmiller is entitled to recover any damages which you may find she has sustained as a result of the occurrence after you have reduced them in proportion to the degree of her own negligence.

On the other hand, if Danny Cluff was not negligent or if the negligence of Sharra Druckenmiller is equal to or greater in degree than the negligence of Danny Cluff, then

Sharra Druckenmiller is not entitled to recover any damages.

The jury returned a general verdict in favor of Mr. Cluff and M.S. Carriers.

This verdict, in effect, was a declaration that the jury had concluded either that Mrs. Druckenmiller had not met her burden of proof that Mr. Cluff was negligent or that her own negligence was equal to or greater than any negligence assessed against Mr. Cluff. This court will affirm the verdict and judgment of the trial court if the verdict is supported by any substantial evidence; the question is not whether the evidence would have supported some other conclusion but whether it supports the conclusion reached by the trier of fact. *John Cheeseman Trucking, Inc.* v. *Dougan*, 313 Ark. 229, 853 S.W.2d 278 (1993).

The record of trial shows that Mrs. Druckenmiller, by her own testimony, provided a substantial evidentiary basis for the trial court to submit the issue of her negligence to the jury. For example, the following dialogue transpired during her cross-examination:

Q  Mrs. Druckenmiller, I want to take you a minute back to the day of the accident so we can make sure we understand what your testimony is about how the accident occurred. I think we all agree you were traveling on the inside lane closest to the median, is that correct?

A  Yes

Q  And you first saw Mr. Cluff approximately 75 to 100 feet away, is that correct?

A  Yes.

Q  Okay. And if I understand your testimony correctly from direct examination, are you saying you saw him in the middle of the intersection at that point?

A  No, he was pulling out into the intersection.

Q  Okay. In any event, you saw him moving into the intersection about 75 to 100 feet away?

A  Yes.

Q   Okay. And you thought, at that point, that he was going to stop and you could just go on straight around his truck?

A   Yes. I thought at that point that he saw me and that I would be able to manuever around in front of him.

Q   Okay. So despite the fact that he was in the intersection, you made the decision to continue on toward the intersection, is that correct?

A   Yes.

. . .

Q   So, Mrs. Druckenmiller, you saw him doing that and you made the decision to continue on because you thought you could get around him, is that correct?

A   Yes.

Q   And you did not actually start applying your brakes until you were about 50 feet away from Mr. Cluff, is that correct?

A   I had started applying my brakes. I did not have to slam on my brakes that —

Q   Okay. You first started applying your brakes when you were approximately 50 feet away from Mr. Cluff, is that correct?

A   Yes.

(T. 170-171) The jury could have concluded from the testimony that Mrs. Druckenmiller's collision resulted from her waiting to apply her brakes until she was approximately fifty feet away from Mr. Cluff's vehicle after having seen the truck turning at a distance of seventy-five to one-hundred feet.

Moreover, photographic evidence provided a basis for the jury to conclude that Mrs. Druckenmiller failed to keep her vehicle under control — the duty addressed by AMI 901. As she testified, she was traveling in the inside lane next to the median when she saw Mr. Cluff's truck in the intersection. The photographs of the accident site show that Mrs. Druckenmiller's car skidded from the inside to the outside lane before colliding with the truck.

As for Mr. Cluff's actions, the evidence presented was sufficient to enable the jury to determine, under AMI 903, incorporating Ark. Code Ann. § 27-51-502, that the truck driver had yielded right-of-way to "all vehicles" that constituted an "immediate hazard." Mr. Cluff testified that no vehicles were approaching from the opposite direction at the time he began making his left turn in the intersection. Indeed, he stated that he allowed two cars to pass by before he started turning. It was his belief, he stated, as an experienced driver, that he could see far enough down the road in order to make a turn safely.

It is the prerogative of the jury to believe or disbelieve the testimony of any witness. *Ford Motor Co.* v. *Massey*, 313 Ark. 345, 855 S.W.2d 897 (1993). Further, the jury may choose simply to believe a portion of the testimony of each party. *Johnson* v. *Clark*, 309 Ark. 616, 832 S.W.2d 254 (1992). Here, the jury implicitly found that Mrs. Druckenmiller's claim that Mr. Cluff's negligence was the proximate cause of the collision was not credible.

But, more to the point, Mrs. Druckenmiller's own statements on cross-examination amply warranted the trial court's submission of the question of her negligence to the jury. The trial court, therefore, did not err in this regard, and we so hold.

## II. *"Sudden emergency" instruction — AMI 614*

In her second point for reversal, Mrs. Druckenmiller argues in the alternative that, if there was a submissible issue concerning her negligence, she was still entitled to the benefit of the "sudden emergency" instruction, AMI Civil 3d, 614:

> A person who is suddenly and unexpectedly confronted with danger to himself or others not caused by his own negligence is not required to use the same judgment that is required of him in calmer and more deliberate moments. He is required to use only the care that a reasonably careful person would use in the same situation.

Mrs. Druckenmiller proffered AMI 614 during the reading of instructions, and the trial court refused to give it but noted the proffer. The evidence presented at trial, however, showed that the sudden emergency instruction was not appropriate.

Recently, we have said that in order to warrant the giving of AMI 614, the driver must be in a stressful situation that dictates a quick decision regarding possible courses of conduct. *Diemer* v. *Dischler*, 313 Ark. 154, 852 S.W.2d 793 (1993). Before a person is entitled to the instruction, she must have been aware of the danger, must have perceived the emergency, and must have acted in accordance with the stress caused by the danger. *Id.*

For example, in *McElroy* v. *Benefield*, 299 Ark. 112, 771 S.W.2d 274 (1989), we approved the giving of the sudden emergency instruction because of the circumstances surrounding the accident. The appellee, Benefield, testified that, as he came over a rise in the road, he saw the appellants' vehicle sitting at the edge of the highway, and he decided to ease over to avoid hitting it. As he was doing so, however, the McElroys suddenly pulled out in front of him. Benefield slammed on his brakes, skidding a distance of 108 feet to the point of impact. We held that the evidence supported Benefield's contention that he was confronted with a sudden emergency.

On the other hand, in *Diemer* v. *Dischler, supra,* we held that "the trial court had a sound basis for finding that the danger was not so sudden or unexpected as to justify the instruction." 313 Ark. at 159, 852 Ark. at 795. There, the appellant, Diemer, had rounded a curve some distance from an intersection where a forklift driven by the appellee, Dischler, had begun to cross and was in her lane of traffic. Dischler stated that he saw Diemer's car heading toward him from a distance of between 200 to 300 feet at what appeared to be a "pretty fast" speed, and two accident reconstructionists testified that, given the posted speed limit and natural reaction time, Diemer could have stopped before hitting the forklift or could have exercised at least two options.

In the *Diemer* case, we noted that where the evidence of some negligence on the part of the requesting party is "very strong," that party is not entitled to the sudden emergency instruction. This view represents an attempted reconciliation of two previous, apparently inconsistent approaches, and was first formulated by the Arkansas Court of Appeals in *Ashmore* v. *Ford*, 267 Ark. 854, 591 S.W.2d 666 (Ark. App. 1979):

Two lines of Arkansas Supreme Court cases have developed on the propriety of giving this instruction. Some say the language of the instruction pointing out that it applies only where the negligence of the party seeking the instruction did not cause the emergency is a sufficient safeguard, thus implying the instruction may be given even when there is some evidence of negligence on the part of the party seeking the instruction. *See, e.g., Hooten* v. *DeJarnett*, 237 Ark. 792, 376 S.W.2d 272 (1964). Others say a party is not entitled to the instruction where his own negligence has created the emergency. See, *e.g., Williams* v. *Carr, et al.*, 263 Ark. 326, 565 S.W.2d 400 (1978). These approaches are not inconsistent. When they are combined, the result is that the trial judge may give the instruction in cases where there is some negligence on the part of the party seeking the instruction, but the instruction should not be given where the evidence is very strong that the party requesting the instruction has "created" the emergency by his own negligence.

267 Ark. at 860, 591 S.W.2d at 670. We explicitly adopted the *Ashmore* v. *Ford* synthesis in *Scoggins* v. *Southern Farmers' Ass'n*, 304 Ark. 426, 803 S.W.2d 515 (1991), where we quoted the language of the opinion by the Court of Appeals and declared that "We regard that reasoning as sound. . . ." 304 Ark. at 433, 803 S.W.2d at 519.

■ In considering the present case, however, we have concluded that *Ashmore* v. *Ford*'s "very strong" standard is a confusing and misleading statement of the law where AMI 614 is concerned, and for this reason we retreat from our position set forth in both *Scoggins* v. *Southern Farmers' Ass'n, supra*, and *Diemer* v. *Dischler, supra*. The language of the sudden emergency instruction speaks in terms of "[a] person who is suddenly and unexpectedly confronted with danger to himself or others *not caused by his own negligence*" and supplies no verbal qualifier or intensifier to justify the "very strong" standard.

Thus, our cases since *Scoggins* v. *Southern Farmers' Ass'n, supra*, have interpolated a position regarding the instruction that is in fact inconsistent with AMI 614's clear language. Specifically, in *Diemer* v. *Dischler, supra*, we held that, under the sce-

nario presented, the trial court could have readily found that the evidence was sufficiently strong that Diemer had been speeding and thus helped to create the emergency and, therefore, that the trial court correctly refused to give AMI 614. The corollary to this rationale would necessarily be that if the evidence of negligence on the part of one seeking to invoke AMI 614 is merely slight, he or she is entitled to have the instruction read to the jury. The application of such a principle would amount to a subversion of the sudden emergency doctrine.

In reexamining the language of AMI 614 itself, we conclude that, when an emergency arises wholly or partially from the negligence of the person who seeks to invoke the sudden emergency doctrine, AMI 614 has no application and should not be delivered to the jury. *See Smith* v. *Stevens*, 313 Ark. 534, 855 S.W.2d 323 (1993); *Williams* v. *Carr, supra; Johnson* v. *Nelson*, 242 Ark. 10, 411 S.W.2d 661 (1967); *Hooten* v. *DeJarnett, supra.*

Applying this narrower reading of AMI 614, we hold that the trial court did not err in refusing to give the sudden emergency instruction. As quoted above, Mrs. Druckenmiller acknowledged that when she saw Mr. Cluff turning in the intersection, at a distance of between seventy-five to one-hundred feet, she decided to continue heading toward him in the belief that she could get around him. She did not apply her brakes until she was about fifty feet away from the truck, and, further, she "did not have to slam on my brakes." Like the appellant in *Diemer* v. *Dischler, supra*, Mrs. Druckenmiller had a clear view of a vehicle already in an intersection. Unlike the situation in *McElroy* v. *Benefield, supra*, there was no sudden veering into the path of an oncoming vehicle.

If there was an emergency here, it was one of Mrs. Druckenmiller's making. One who creates an emergency cannot take advantage of AMI 614. *Smith* v. *Stevens, supra.* As we have indicated, the instruction applies, by its own terms, only to emergencies not caused by a person's own negligence. *Id.* In the *Smith* case, two vehicles collided at the crest of a hill, and both drivers stated that they did not see the other vehicle until about two seconds before the impact and that they immediately made efforts to stop. We rejected one party's assertion that the other had created the emergency. Any emergency, we held, "was created by

the nature of the hill and the road." 313 Ark. at 538, 855 S.W.2d at 326.

    ▮    In the present case, though, Mrs. Druckenmiller had the benefit of a level road and a clear field of vision. She simply waited too long to begin braking. To reiterate, one cannot create an emergency by her own action and then seek to benefit by requesting an instruction on sudden emergency. *Williams* v. *Carr, supra.* Hence, as we have held, the trial court did not err in declining to read AMI 614 to the jury.

Affirmed.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I concur. Today, the court corrects an obvious misstatement of the law which has crept into a few Arkansas cases where AMI 614, our "sudden emergency" instruction, has been in issue. The recurring error is obvious and required this court's attention and correction.

AMI Civil 3d, 614 provides as follows:

> A person who is suddenly and unexpectedly confronted with danger to himself or others *not caused by his own negligence* is not required to use the same judgment that is required of him in calmer and more deliberate moments. He is required to use only the care that a reasonably careful person would use in the same situation. (Emphasis added.)

As can be readily discerned from AMI 614's language, the sudden emergency doctrine has no application and may not be asserted if the emergency arises wholly or partially from the negligence of the one who seeks to invoke the doctrine. *See Smith* v. *Stevens*, 313 Ark. 534, 855 S.W.2d 323 (1993); *Williams* v. *Carr*, 263 Ark. 326, 565 S.W.2d 400 (1978); *Johnson* v. *Nelson*, 242 Ark. 10, 411 S.W.2d 661 (1967); *Hooten* v. *DeJarnett*, 237 Ark. 792, 376 S.W.2d 272 (1964). *See also* J. D. Lee and Barry A. Lindahl, *1 Mod Tort Law* § 3.37 (rev. ed. 1993); W. Page Keeton, et al., *Prosser and Keeton on Law of Torts* § 33, at 196-197 (5th ed. 1984); Henry Woods, *Comparative Fault* § 4:8 (2nd ed. 1987 and Supp. 1993).

Contrary to AMI 614's clear language, several cases have surfaced that have stated the law differently. For example, in our most recent case of *Diemer* v. *Dischler*, 313 Ark. 154, 852 S.W.2d 793 (1993), this court, citing *Scoggins* v. *Southern Farmers' Assn.*, 304 Ark. 426, 803 S.W.2d 515 (1991), and *Ashmore* v. *Ford*, 267 Ark. App. 854, 591 S.W.2d 666 (Ark. App. 1979), said the following:

> AMI 614 requires the sudden emergency not be caused by the negligence of the party requesting the instruction. *We have held in this regard that where the evidence of some negligence on the part of the requesting party is "very strong," that party is not entitled to the instruction.* (Emphasis added.)

*Diemer* at 159. In applying the foregoing misstatement of the law in AMI 614, the *Diemer* court held that, under the facts existent there, the trial court could readily have found that the evidence was *sufficiently strong* that Diemer was speeding and helped create the emergency, thus, the trial court correctly refused to give AMI 614. Of course, the corollary rule would have been, if the evidence had been *slight* on the part of the party seeking to invoke AMI 614, he or she would have been entitled to have it read to the jury. Such a result is a misapplication of the sudden emergency doctrine.

This court's prior misapplication or misinterpretation of this doctrine is obviously not uncommon. In their treatise, Professors Prosser and Keeton state as follows:

> Despite the basic logic and simplicity of the sudden emergency doctrine, it is all too frequently misapplied on the facts or misstated in jury instructions. As'a result, the model jury instructions in at least Illinois, Florida, Kansas and Missouri recommend that no such instruction be given, and Mississippi abolished the doctrine altogether in 1980.

W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 33, at 197 (5th ed. 1984).

Judge Henry Woods, in his edition and update, points to other states adhering to the comparative negligence concept that have since abolished the sudden emergency doctrine. *See Eslinger*

v. *Ringsby Truck Lines, Inc.*, 195 Mont. 292, 636 P.2d 254 (1981); *Knapp* v. *Standford*, 392 So. 196 (Miss. 1980); cited as *Contra Young* v. *Clark*, 814 P.2d 364 (Colo. 1991); *Keller* v. *Vermeer Mfg. Co.*, 360 N.W.2d 502 (N.D. 1984). *See also Miller* v. *Eichhorn*, 426 N.W.2d 641, 644 (Iowa App. 1988) and *Bellas* v. *Dressler Industries, Inc.*, 564 So.2d 1305 n. 4 (La. App. 1st Cir. 1990), cert. denied at 569 So.2d 988 (these two cases express doubt regarding the sudden emergency doctrine after their respective state's adoption of comparative fault).

Other more recent cases in sister jurisdictions have joined the trend either to restrict the use of the sudden emergency instruction in negligence cases or to abolish it altogether. *DiCenzo* v. *Izawa*, 723 P.2d 171 (Hawaii 1986) (inasmuch as the risk of prejudicial error in instructing the jury on the [sudden emergency] doctrine exceeds by far the possibility of error in not doing so, [the court] thinks the wiser course of action would be to withhold sudden emergency instructions); *Bass* v. *Williams*, 839 S.W.2d 559 (Ky. App. 1992) (with the adoption of comparative negligence, it is error to instruct the jury on a sudden emergency theory); *Cowell* v. *Thompson*, 713 S.W.2d 52 (Mo. App. 1986) (emergency instructions are no longer permitted under MAI); *Simonson* v. *White*, 713 P.2d 983 (Mont. 1986) (the use of the sudden emergency instruction in automobile cases is hereafter banned); *McClymont* v. *Morgan*, 238 Neb. 390, 470 N.W.2d 768 (1991) (the giving of an independent sudden emergency is not warranted in a negligence action). *See also* 10 ALR 5th 680, *Modern Status of Sudden Emergency Doctrine.*

In reviewing those cases from jurisdictions that have adopted comparative fault, the appellate courts have generally stated that the problem in giving the sudden emergency instruction is that it singles out one aspect of the general standard of care and may give the doctrine of sudden emergency undue emphasis and may unduly emphasize one party's argument regarding a certain part of the standard of care. The Hawaii Supreme Court worded it another way, saying, "It would be foolhardy to jeopardize the outcome of trial by giving a [sudden emergency] instruction adding little to the basic jury charge that must be given in any negligence action." *DiCenzo* v. *Izawa*, 723 P.2d at 173.

The utility of the sudden emergency doctrine seems of lit-

530

tle value to me in light of our state's adherence to the comparative fault doctrine view. In my view, where a sudden emergency occurs, that is only a circumstance for the jury to consider when determining whether a person was exercising ordinary care under the circumstances. An emergency instruction adds nothing to the established law applicable in any negligence case and serves only to leave an impression in the minds of jurors that a driver is somehow excused from the ordinary standard of care because an emergency existed.

The emergency instruction does little more than confuse attorneys and courts when weighing its application, and understandably so when they are about to agree upon giving the comparative fault instruction. If this has been confusing to the bench and bar (and the cases and treatises reflect it has been), surely we cannot expect any better from a jury which must be confounded by such choices.

I certainly agree with the court's decision to clarify our law that AMI 614 should never hereafter be applicable in situations where there is *any* evidence of negligence on the part of the party seeking to invoke it. Preferably, I think the court should abolish the use of the sudden emergency doctrine since its use is unnecessary, considering Arkansas's comparative fault instruction, and serves mainly to confound those who must apply it.